# Gallagher v. Zoning Board of Adjustment

*Daniel Sherman* and *W. N. Keenan*, for appellants.

*L. L. Wolffe, G. R. Ivins, D. Berger* and *Carl Zucker*, for appellee.

*Ettinger, Gallagher and Silverman*, for intervening appellee.

ALEXANDER, J., September 25, 1963.—This matter is before the court upon a writ of certiorari to the zoning board of adjustment.

The board granted a use permit to the intervening appellee, Young People's Church of the Air, Inc., for the use of premises 7380 Henry Avenue, Philadelphia, Pa., as a radio broadcasting studio and broadcasting tower in connection with the intervening appellee's interdenominational religious program and activity of

broadcasting religious services and messages to radio listeners.

The property in question is located in an "A" residential district. The board based its decision upon section 14-203 (1) (b) and (h) of the 1956 Philadelphia Code, which provides that "churches, chapels, convents, monasteries, and their adjunct residential dwellings or other places of worship" are permitted uses in "A" residential districts and that "accessory uses . . . customarily incident to any of the . . . permitted uses" are permissible under the said zoning classification.

The board concluded that the proposed use is a "church" use and that the erection of the proposed radio broadcasting tower is an accessory use customarily incident to the permitted use.

The proposed radio broadcasting tower would rise 301 feet in height and would be erected on a triangular base, 25 feet wide, in the rear yard of the subject premises at a distance of approximately 210 feet from the south curbline of Henry Avenue.

The subject premises is presently used as a single-family dwelling. It is a twin house, sharing a "party" wall with premises 7382 Henry Avenue, which is also a single-family dwelling. The existing house is 48 feet south of the south curbline of Henry Avenue. The lot is 53 feet wide along the Henry Avenue curbline, its easterly boundary is 257.5 feet in depth, its westerly line runs through the "party" wall to a depth of 157.5 feet from the south curbline of Henry Avenue and then extends westwardly for a distance of approximately 42.5 feet, from which point it extends an additional depth of 100 feet to the rear line which is approximately 95.5 feet long and parallel to the south curbline of Henry Avenue.

The intervening appellee possesses an option to purchase the subject premises. Their radio broadcasting studio and offices would be located within the existing

dwelling structure at 7380 Henry Avenue. No exterior changes in the building are planned.

The proposed radio station has been licensed by the Federal Communications Commission as an FM station. Intervening appellee proposes to sell radio time throughout the week and on Sundays. The Sunday programs will be limited to religious and church programs and the programs of the Young People's Church of the Air will also be presented on Sundays. The weekday broadcasting time would be sold to any qualified sponsor on a commercial basis.

Accordingly, the proposed radio station will be primarily a commercial enterprise in that the great majority of its broadcasts will be sponsored and paid for by organizations other than the Young People's Church of the Air. The proposed radio station would be supported in part by the voluntary contributions of the listening public. These contributions would be solicited over the air waves, and in the past intervening appellee has received contributions monthly from more than 50,000 persons, most of whom live in the Philadelphia area, which is reached by intervening appellee's radio station at Wyncote, Pa.

The record establishes that no conventional church building of the type in which people gather to worship will be erected on the subject premises. Intervening appellee does not have a church organization, congregation or program in the conventional sense. Those persons who contribute financially to the Young People's Church of the Air have no governing or voting rights in the organization. It is governed solely by a self-perpetuating board of directors. Dr. Percy B. Crawford, a Baptist minister, is the founder and president of the intervening appellee.

The record establishes that Young People's Church of the Air has been active in the field of religion for some 30 years, and that it is generally recognized as a

church or religious organization. It is exempt for tax purposes under the applicable laws and regulations of Pennsylvania and the United States.

Regardless of the nature of the intervening appellee as an organization, the zoning issue to be passed upon in this case is whether or not the proposed use is a permitted use under the 1956 code. If permitted, the board's decision must be affirmed. If not permitted and if the board has misapplied the law, its decision must be reversed: Lance Appeal, 399 Pa. 311, 313 (1960).

The issue presented is obviously similar to the issue decided by the Supreme Court in the Russian Orthodox Church Appeal, 397 Pa. 126, 127, 130 (1959), in which the court decided that the use of church-owned land as a cemetery was not a religious use as permitted in an area zoned for agricultural and residential purposes.

The crux of the issue presented in the Russian Orthodox Church Appeal, supra, and presented in this case, was discussed as follows at pages 129, 130 of the opinion of the Supreme Court:

"Appellant's [the Church's] contention goes not to the actual use to be made of the land but to an extraneous aspect taken on by the land depending on the nature of the land's owner. We do not find that such a distinction is justified within the intendment of the ordinance. We believe that a cemetery is basically a secular use of land and a use which is not incidental to or in support of the primary uses permitted in the . . . District, namely, residential and agricultural. We do not believe that the fact that the land will be owned by a religious institution alters the basic secular use to be made thereof, and we would be most reluctant to construe the ordinance so as to make a distinction not found therein based upon the nature of the owner of the land rather than the nature of the use to be made of the land. Any secular use under appellant's contention can be capable of a religious characterization if a particular sect

ascribed religious implications thereto. Were we to accept appellant's position one of the basic purposes of zoning, namely, *area homogeneity* . . . would be rendered nugatory."

Therefore, it is clear that it is the proposed use of the land and not the nature of the using organization which must control zoning cases. Intervening appellee's proposed radio broadcasting station and tower is not a use permitted in an "A" residential district, nor is the proposed installation a "church" within the meaning of the code. To hold otherwise, that a radio broadcasting station and tower is a "church" or "other place of worship", is a clear error of law and contrary to the authority of the Supreme Court, supra.

Radio broadcasting facilities of the type in question may be permitted in a "limited industrial" district under the 1956 code and in an "L-1" limited industrial district under the 1962 code, provided that a certificate is obtained from the board. Such use is not permissible in residential areas without the issuance of a zoning variance.

Moreover, the proposed use does not meet or comply with the definition and discussion of the word "church" as found in numerous appellate court cases: Upper St. Clair Township Grange Zoning Case, 397 Pa. 67, 72, 73 (1959) ; Presbyterian Church v. Allison, 10 Pa. 413, 416-17 (1849) ; Her-Bell, Inc. Liquor License Case, 176 Pa. Superior Ct. 206, 210 (1954) ; Philadelphia v. Overbrook Park Congregation, 171 Pa. Superior Ct. 581, 586 (1952).

In the Upper St. Clair Township Grange Zoning Case, supra, the court stated as follows, at pages 72-73:

"It must be presumed that the township intended to use the word 'church' in the zoning ordinance according to its usual and ordinary meaning. Shapiro v. Zoning Board of Adjustment, 377 Pa. 621, 105 A. 2d 299. Black's Law Dictionary defines the word as 'an organi-

zation for religious purposes or for the public worship of God.' The ordinary meaning of the term contemplates a place or edifice consecrated to religious worship, where people join together in some form of public worship. The courts of this state have similarly interpreted the word 'church' when it has been employed in other statutes. See Laymen's Week-End Retreat League v. Butler, 83 Pa. Superior Ct. 1; Her-Bell, Inc. Liquor License Case, 176 Pa. Superior Ct. 206, 107 A. 2d 572."

Accordingly, the proposed use does not comply with the ordinary meaning of the word "church" as used in the code and as applied by the courts of this State. The record clearly establishes that intervening appellee would operate a commercial radio station and broadcasting facilities throughout the week and for some hours on Sunday by selling radio broadcasting time to its customers. Only a small number of broadcasting hours would be devoted each Sunday to the religious purpose of the intervening appellee. The proposed use is clearly a secular use of land as found by the Supreme Court in the Russian Orthodox Church Appeal, supra.

In addition, this court must conclude that a 301-foot radio tower is not an accessory use ". . . customarily incident to" the permitted use of land as a "church" or "other place of worship" in an "A" residential district under the 1956 code. The case cited by intervening appellee (Lord Appeal, 368 Pa. 121 (1951)), does not hold that a commercial type of radio broadcasting tower, more than 10 times the height of the rooftops of the surrounding residential homes of the appellant-protestants, may be erected as incidental to the permitted uses in such a residential area. The court's decision in the Lord Appeal, supra, is clearly distinguished on its facts from the present case.

The intervening appellee's zoning application was originally based upon the position that a variance

should be granted in their favor under the theory that an "unnecessary hardship" would result if their application were not granted. Therefore, this court is compelled to rule that in light of our review of the testimony presented to the Board, such a theory is affirmatively disproven. Among other testimony, the present owner of the subject premises stated that his property is fully suited and usable as an "A" residential dwelling. Clearly, intervening appellee would be unable to show any "hardship" other than a financial hardship by the refusal of its proposed use of the property in question.

The court concludes that the zoning board of adjustment committed a clear error of law in granting a use permit to the intervening appellee in this case. The decision of the board is, therefore, reversed and the appeal of the appellant-protestants is sustained.