## Shapiro *v.* Zoning Board of Adjustment, Appellant.

Argued March 25, 1954. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

` *James L. Stern,* with him *Matthew W. Bullock, Jr.,* Assistant City Solicitors, *Abraham L. Freedman,* City Solicitor and *Jerome J. Shestack,* First Deputy City Solicitor, for City of Philadelphia, appellant.

*John C. Noonan,* with him *Irvin Stander,* for intervening defendants, appellants.

*C. Brewster Rhoads* and *Michael H. Egnal,* with them *Don F. D'Agui,* for plaintiffs, appellees.

OPINION BY MR. JUSTICE JONES, June 4, 1954:

While these several appeals relate in general to the same matter, viz., the appellees' right under the zoning ordinance of the City of Philadelphia to permits for a particular use of the property involved, the

appeals raise entirely different questions, growing out of separate actions, which require separate records and briefing. We shall, however, dispose of all appeals in this one opinion.

Some time prior to March, 1953, Julian B. Shapiro became the lessee of a vacant lot of ground located at the southeast corner of Stenton Avenue and Tulpehocken Street in the northwest section of Philadelphia, having a frontage on Stenton Avenue of 275 feet and on Tulpehocken Street of 450 feet. The land is in an area which was zoned "A" Commercial. The uses permitted in an "A" Commercial District, as prescribed by Section 16 of Philadelphia's zoning ordinance, specifically included those "uses permitted in any Residential District"; and, among the uses permitted in a "D" Residential District, as set forth in Section 10 of the ordinance, were "Athletic or amusement parks which shall not be changed to other uses that are not in conformity with the district regulations."

On March 18, 1953, Shapiro made application to the department of licenses and inspections of the City for use registration permits which would enable him to establish a "kiddie amusement park" on the demised premises. The application was denied and from that action Shapiro appealed to the zoning board of adjustment. At a public hearing before the board, the issuance of the permits was vigorously opposed by residents of the area. A few days later (April 23rd), the board, by a vote of three to two (one member abstaining), dismissed the appeal, stating that "since the Zoning Ordinance does not permit the establishment of a Kiddie Amusement Park in an 'A' Commercial District, a Permit *should not* be granted." The majority of the board were of the opinion that the applicant was not entitled to the requested use permits as of right; that a variance should not be granted

(the applicant having failed to make out a case of hardship) ; and that the establishment of a "kiddie amusement park" would be detrimental to the peace and quiet of the neighborhood and increase the possibility of juvenile delinquency. The two dissenting members of the board were of the opinion that the applicant was entitled to the use permits as a matter of right.

Shapiro promptly appealed the board's adverse decision to the Court of Common Pleas No. 4 of Philadelphia County. By stipulation of counsel certain parties, interested as local property owners, intervened as defendants in the appeal proceeding. The matter came before the court en banc which, on June 25, 1953, sustained the appeal and remanded the record to the zoning board of adjustment with directions to issue the use registration permits. In an opinion filed in support of its adjudication and order, the learned court below held that the clear and unambiguous language of the zoning ordinance entitled Shapiro to the requested use permits as a matter of right and found, moreover, that there was "no supporting evidence of any kind" in the record which would justify the conclusions of the board as to the consequences which it believed would flow from an issuance of the permits. Instead of complying with the court's order, the board (and the intervening defendants) filed exceptions to the order, which exceptions the court forthwith struck off on the ground that there was "no authority in law authorizing the filing of such [a] document." The City of Philadelphia then intervened as a party defendant with the avowed purpose of taking an appeal to this court. Both the City and the intervening defendants appealed at Nos. 284 and 298 January Term, 1953, respectively, from the lower court's order directing the issuance of the permits. Hearing of these appeals,

when called for argument at our sitting in Philadelphia in January, 1954, was postponed to await argument contemporaneously with appeals yet to be taken in another proceeding (to be described presently) then also pending in Court of Common Pleas No. 4 of Philadelphia County.

On May 25, 1953, more than two months after Shapiro's original application for the permits had been filed, there was introduced in city council a proposed amendment of the zoning ordinance designed to prevent the establishment of amusement parks in an "A" Commercial District except when authorized by a certificate of the board of adjustment; and, on July 2nd, a week after the Court of Common Pleas had ordered the issuance of the permits, city council passed a resolution announcing its intention to enact a proposed amendatory ordinance at its next session on July 23rd. That the action of city council was a transparent attempt to thwart effectually Shapiro's purpose to use the property for an amusement park is confirmed by the third "whereas" clause of the resolution which reads as follows: "WHEREAS, There appears to be the possibility of the establishment of such an amusement park immediately adjoining a residential district in northwest Philadelphia prior to the final enactment of [the proposed amendatory ordinance] . . . ." Furthermore, when, on July 10th, Shapiro received his permits pursuant to the court's order of June 25th, each permit was encumbered by the board with the following endorsement: "Notice is hereby given to the holder of this permit that if [the amendatory ordinance], currently pending before City Council is enacted, this permit will be revoked. According to a Resolution of City Council passed on July 2, 1953, [the proposed amendment] is scheduled for final passage on July 23, 1953. It is the intention of the Department of Licenses

and Inspections that any action taken in reliance upon the issuance of this permit will create no vested rights in the event of passage of [the amendment]." On July 14th, on the plaintiff's petition for relief, the court directed that the "embellishment" on the permits be removed.

The amendatory ordinance was enacted by city council on July 23rd and became effective the following day when approved by the Mayor; and, on August 13th, the department of licenses and inspections directed the zoning administrator to revoke Shapiro's permits which was done. Shapiro and Stenton Park, Inc. (a Pennsylvania corporation, organized to operate the proposed amusement park, of which Shapiro is both president and general manager), appealed to the zoning board of adjustment, contending that a vested right had been acquired in the permits when issued as per the order of court. Nonetheless, the board sustained the action of the department of licenses and inspections, and an appeal by Shapiro and his corporation to the Court of Common Pleas No. 4 followed. The court reversed the action of the board on the ground that the amendatory ordinance was inapplicable and of no effect as to the premises in question because it constituted special legislation directed at a particular individual and that Shapiro and Stenton Park, Inc., had acquired vested rights in the validly issued permits. Both the City and the intervening defendants appealed at Nos. 160 and 165 January Term, 1954, respectively, from the lower court's order reversing the revocation of the use permits and directing their restoration. These appeals and those first above mentioned were then argued before us at our sitting in Pittsburgh in March, 1954.

It is unnecessary to enter upon an extended discussion as to Shapiro's right to the requested use per-

mits under the ordinance as originally written and as it continued to exist without change when the permits were actually issued to him pursuant to the order of the court below. The plain words of the zoning ordinance, when given their usual and ordinary meaning, which are required to give them (see *Otto Milk Company v. Washington City,* 363 Pa. 243, 249, 69 A. 2d 399), leave no doubt that it authorized the issuance of permits for the use of land in a "D" residential zone as an amusement park. The appellants seek to place an unwarranted limitation upon that term by contending that council intended by the ordinance to authorize only certain types of amusement parks in "D" residential districts. If such had been council's intent, it should have plainly so indicated by the ordinance. As the learned judge aptly observed for the court below,—"Many kinds of amusement parks exist, e.g., purely recreational, solely musical, cultural, educational, literary, artistic, scenic, rest havens, and a host of others that may be conceived of, depending upon the education, training, disposition, desires, state in life, health, social position, age and sensibilities of those who patronize them, and they may be public or private. Surely no legislative body, in the absence of a clear and explicit expression of such an intention, should have imputed to it a mandate that children, or 'kiddies' should be excluded from the benefits and pleasures enjoyed by their elders. The mere fact, therefore, that the proposed amusement park is designed primarily for the use of children under twelve years of age, and employing devices capable of accommodating those weighing a hundred pounds or less, does not destroy the character of the proposed use as an 'amusement park'."

Nor is there any merit in the appellants' contention that the fact that the plaintiff intends to make

a charge for the use of the amusement devices renders the operation something other than an amusement park and, consequently, prohibited by the zoning laws. The court below sufficiently answered this contention when it stated,—". . . if the legislative body had so intended it could readily, and most certainly would, have included such a modification or restriction." This conclusion is especially indicated when we consider that even plainly expressed restrictions imposed by zoning ordinances are strictly construed: *Lord Appeal,* 368 Pa. 121, 126, 81 A. 2d 533.

It follows that the order of the learned court below directing the issuance of the use permits was proper. Appeals Nos. 284 and 298 January Term, 1953, will accordingly be dismissed.

The appeals from order reversing the zoning administrator's revocation of the Shapiro registration use permits and directing their restoration (Nos. 160 and 165 January Term, 1954) are equally without merit. The amendatory ordinance, as we have seen, was not finally enacted until more than three weeks after the court had ordered the permits to issue; and, three weeks later still (August 13th), the duly acquired use permits were summarily revoked by the zoning administrator in reliance upon the provisions of the amendatory ordinance. The learned court below found from the history of events, as it had set them forth in detail in its opinion, and from the contents of the amendatory ordinance, and the resolution which preceded it, that the ordinance "was special legislation, unjustly discriminatory, arbitrary, unreasonable, and confiscatory in its application, in that *it was aimed directly at this particular piece of property"* (Emphasis supplied). With that conclusion, it is not possible reasonably to disagree. As the court below saw it, ". . . no other conclusion is even remotely possible in

the light of [the resolution's] language." It should be noted, in passing, that neither the validity nor effect of the ordinance prospectively is in any way involved in these appeals.

The plaintiff's use permits having been applied for and issued as a matter of right under existing law and the subsequent amendatory ordinance being incapable of affecting them, the permits stand wholly unimpaired and must be so recognized by the municipal authorities. As Mr. Chief Justice VON MOSCH-ZISKER had occasion to declare in *Herskovits v. Irwin*, 299 Pa. 155, 160, 149 A. 195,—". . . the original application in the present case was made before the amending ordinance here in question was even drafted, and it is not denied that the plans, so far as they went, complied with all existing legal requirements. Under such circumstances, the action of the inspector in issuing a permit was a mere ministerial duty, which permitted of no discretion and could be enforced by mandamus: Coyne v. Prichard et al., 272 Pa. 424, 427; Wright v. France, 279 Pa. 22, 25-6. If a permit cannot rightfully be refused in the first instance, it cannot be arbitrarily revoked after issuance: General Baking Co. v. Street Commissioners of Boston, 242 Mass. 194, 196-7, 136 N.E. 245, 246; State ex rel. Grimmer v. Spokane, 64 Wash. 388, 394, 116 Pac. 878, 880." Nothing further is required of the plaintiffs for their uninterrupted use of their property to which the registration use permits entitled them.

If, however, it be thought for any reason that expenditures or other change in the permittees' position in *bona fide* reliance upon the permits must be shown before vested rights in the permits can be held to have accrued, such proofs are present here. Indeed, the defendants concede that Shapiro made expenditures and incurred liabilities in connection with his pro-

posed use of the land, that such expenditures and liabilities were substantial in amount and that they were made or incurred before the enactment of the amendatory zoning ordinance. All that the defendants assert in attempted denial of the plaintiffs' rights is that their expenditures and liabilities were not made or incurred in reliance upon the permits or in good faith. No factual basis for such assertions is anywhere apparent. Actually, the facts are to opposite effect. The expenditures and liabilities were not made nor incurred until the permits had issued as a matter of right under existing law pursuant to the order of court. Just as in *Lower Merion Township v. Frankel,* 358 Pa. 430, 433, 57 A. 2d 900, ". . . by virtue of originally existing local law, the issuance of the building permit and the owner's expenditure of moneys and his incurring of obligations in connection therewith, he acquired such a vested right to use his property conformably to the permit as to be entitled to protection against the prohibition of a building or zoning enactment adopted after the issuance of the permit: [citing *Herskovits v. Irwin,* supra]."

This case is to be distinguished from a case such as *A. J. Aberman, Inc. v. New Kensington,* p. 520, ante, where the building permit was not obtained in good faith but merely in anticipation of the contemplated enactment of a general zoning law and in an effort to circumvent it. In the *Aberman* case, the owner did not apply for a building permit until the very day a comprehensive zoning ordinance for the entire city had been submitted to council following several months' study and consideration of the matter by a duly created zoning commission which had held public hearings upon proper notice and had submitted to council a final report along with the proposed ordinance. A building permit having been refused by the

city clerk, the court in mandamus ordered the permit to issue but later rescinded its order as having been "inadvertently" entered. The applicant in that case acted with inordinate and unwarranted haste in making expenditures during the few days the contested permit was outstanding before a stay thereof was ordered by the court and, accordingly, had no vested right in the permit.

The orders appealed from are affirmed at the appellants' costs.