Russian Orthodox Church Appeal.

Argued March 24, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE, JJ.

*Carl M. Kerchner,* with him *Angel & Kerchner,* for appellant.

*J. Frank Kelker,* for appellee.

OPINION BY MR. JUSTICE COHEN, June 30, 1959:

Appellant purchased some eighty-eight acres of land in the so-called Sunflower District of Rochester Township, Beaver County, Pennsylvania, and wishes to use this land as a cemetery.

The Township of Rochester has a zoning ordinance which divides the township into three districts. With regard to the Sunflower District, Section 100 provides, "The Sunflower District is zoned primarily for *residential and agricultural uses as now exist in the District.*" (Emphasis supplied). Section 201 of the ordinance sets forth more specifically the uses to which land in that district may be put.[1]

---

[1] "Section 201. A building may be erected, altered or used, and a lot or premises may be used for any of the following purposes and for no other: 1. Single-family detached dwellings, other than house trailers. 2. Conversion apartments, Garden apartments and Multiple Family Dwellings. 3. Club, fraternity house or lodge, when authorized as a special exception . . . 5. Telephone central office, electric sub-station and utility lines. 6. Municipal recreational uses. 7. Agricultural use, including the keeping of livestock or poultry, customarily incidental to such use, or nursery. 8. The sale of farm products, including the sale of live-

In Section 201(4) the ordinance provides that the following uses may be made of land in the Sunflower District, namely: "Educational, religious, philanthropic use and hospital." It is appellant's position that a cemetery is a religious use and hence permitted in the Sunflower District.

We are not called upon nor would we attempt to construe the word "religious" in the abstract. Our sole function in this case is to ascertain whether the enactors of the Rochester Township Zoning Ordinance intended to permit a cemetery in the Sunflower District as a so-called religious use.

It should first be noted that the Sunflower District is zoned primarily for residential and agricultural uses. A cemetery clearly does not come within either of these. It is apparent from a reading of Section 201 in its entirety that those uses permitted therein which are not purely agricultural or purely residential are ancillary to them. These general observations are helpful in delineating the scope to be given to the word "religious." They are helpful primarily because it is assumed as one of the basic premises of zoning that *area homogeneity* is one of the ends sought by a zoning ordinance. The above discussion is necessary and helpful because the word "religious" is a word of nebulous bounds and depends for its definition, if construed in the abstract, upon the subjective criteria used by the definer. In order to give the word meaning for the purposes of zoning one must look at the general purposes of zoning and the zoning ordinance in question as a whole.

If a business corporation had purchased the eighty-eight acres in question for use as a cemetery and as a

stock or poultry, produced on the property where offered for sale.
9. A professional office or studio, and rooms for home occupation. . . ."

business venture for profit, there would be no question but that it was not a religious use within the terms of the Rochester Township ordinance. However, appellant contends that a different result obtains because the owner of the land is not a business corporation but a religious group and, therefore, the use to be made of the land is considered a religious use. The appellant supports this position by arguing that the place of burial and burial rites are important elements within the dogma of its religion. We feel that this argument goes too far; for, if accepted, it would mean that a slaughter house owned by a business would not be permitted in the Sunflower District, whereas, the same slaughter house, if owned by a religious sect having as part of its dogma the requirement that animals be slaughtered in a certain way by a certain person and in accord with certain rites, would be permitted. Appellant's contention goes not to the actual use to be made of the land but to an extraneous aspect taken on by the land depending on the nature of the land's owner. We do not find that such a distinction is justified within the intendment of the ordinance. We believe that a cemetery is basically a secular use of land and a use which is not incidental to or in support of the primary uses permitted in the Sunflower District, namely, residential and agricultural. We do not believe that the fact that the land will be owned by a religious institution alters the basic secular use to be made thereof, and we would be most reluctant to construe the ordinance so as to make a distinction not found therein based upon the nature of the owner of the land rather than the nature of the use to be made of the land. Any secular use under appellant's contention can be capable of a religious characterization if a particular sect ascribed religious implications thereto. Were we to accept appellant's position one of the basic purposes of zoning,

namely, *area homogeneity* and the stated primary use to be made of land in the Sunflower District, namely, residential and agricultural, would be rendered nugatory.

Order affirmed.

Mr. Justice MUSMANNO dissents.

———

DISSENTING OPINION BY MR. JUSTICE McBRIDE:

I find no fault in the opinion of the court below so far as it affirms the action of the zoning board of adjustment in denying a variance, but I do not conceive that to be the essential question in the case.

The real question presented is whether the establishment of a cemetery by a Russian Orthodox Church, for burial of only members of that faith from a particular area, constitutes a religious use of land.

The governing Ordinance provides, in Article II, §201(4), that a lot or premises may be used for "educational, religious, philanthropic use and hospital".

The question was misconceived by the Board of Commissioners which denied appellant's request to lay out and maintain a cemetery on the ground that the conduct of a cemetery is not necessarily a religious use. That, of course, is quite true. Here, however, at the hearing before the zoning board of adjustment there was testimony that there were four Orthodox Churches in Ambridge whose members could be buried (about 60 a year) in the cemetery; that among the precepts of the church is the duty of burying the dead; that a cemetery set apart by the church for the burial of its dead members is consecrated or sacred ground being blessed for that purpose; that at the time of each burial the particular plot is blessed; that there is a religious rite for the burying of the dead required by ecclesiastical

laws and the canons of the church; that no persons of any other than the Orthodox faith may be buried in an Orthodox cemetery; that a church cemetery is a religious use of land in the opinion of the clergymen of the church.

The evidence of those who protested the cemetery did not attempt in any way to contradict this evidence. Indeed, one of the protestants, when asked whether he believed that burying the dead was a religious use, said "I think I would be an awful heathen if I didn't."

The position of the commissioners was spoken by one of them at the hearing before the zoning board, as follows: ". . . and now, as a private citizen, I would like to say that a cemetery can be considered a religious function—not just an Orthodox or Catholic cemetery— any cemetery, because it does state in the Bible to bury the dead; but I cannot possibly believe that the men who drew up this zoning ordinance meant that a beautiful home should have a cemetery next door as a religious purpose. If they would have believed a cemetery should be in a residential area, they would have said so."

This seems to point up the problem. Both sides apparently agreed before the board of adjustment that the words "religious use" in the narrow sense did not include a cemetery but that in the broad sense they did. The zoning board of adjustment made findings of fact, and refused the appeal on the ground that "(1) The requested use is not within those permitted under the Zoning Ordinance." The board ended its discussion by saying "It is also the opinion of the Board that 'religious' uses contemplated in said ordinance would be churches or parochial schools, and not such incidental uses as cemeteries." Upon appeal the court of common pleas said: "It is contended that a church cemetery is a religious use of land. Undoubtedly as

viewed by members and officers of this Church, establishing a cemetery does constitute a religious use of land. To be a valid interpretation of the ordinance its provisions must apply to all cemeteries alike. Obviously the term religious use could not be applied to a cemetery, not affiliated with a church, and established as a business venture. Consequently, we cannot interpret religious use to permit cemeteries to be established. This is supported particularly in this case by the fact that the record indicates that the commissioners did not so interpret it."

With this conclusion I do not agree. Certainly it is true that a cemetery established as a business venture is not a religious use of land.

It is equally true that an ordinance, such as that involved in *Catholic Cemeteries Association of the Diocese of Pittsburgh Zoning Case*, 379 Pa. 516, 109 A. 2d 537, which permitted "churches and public schools", did not authorize cemeteries. But the present ordinance is different. It authorizes the religious use of land.

In view of the uncontradicted testimony in this case, which is virtually conceded by all parties, I do not see how it properly may be held that the proposed use of the land by the Russian Orthodox Church would not be put to a religious use by laying out a cemetery. I do not suggest that it is necessary to constitute a religious use that the cemetery itself, or even the particular plot, be consecrated or sacred ground. But it is necessary that there be a religious rite connected with the act of burial according to the ecclesiastical law and precepts of the particular sect. It is a familiar principle that zoning ordinances, since they are in derogation of the normal right of a property owner to use his land as he pleases, must be strictly construed. *Medinger Appeal*, 377 Pa. 217, 104 A. 2d 118;

*Lukens v. Zoning Board of Adjustment,* 367 Pa. 608, 80 A. 2d 765; *Kline v. City of Harrisburg,* 362 Pa. 438, 68 A. 2d 182. The principle of strict construction has not been very well understood. It does not mean that in all cases a narrow or literal interpretation must be adopted as opposed to a broad or flexible construction. It does mean that where two reasonable interpretations are possible it is not the one which is more reasonable but the one which, if reasonable operates in favor of liberty, that should be adopted. *Commonwealth v. Standard Oil Company,* 101 Pa. 119; *Commonwealth v. Exler,* 243 Pa. 155, 89 Atl. 968. As we said in *Archbishop O'Hara's Appeal,* 389 Pa. 35, 131 A. 2d 587: ". . . all property is held in subordination to the right of its reasonable regulation by the government clearly necessary to preserve the health, safety or morals (or general welfare) of the people . . . There is one matter that is quite certain, the power to thus regulate does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property, even though such acts be labeled for the preservation of health, safety, and general welfare . . . While such regulations may not physically take the property, they do so regulate its use as to deprive the owner of a substantial right therein without compensation . . . The right to acquire and own property, and to deal with it and use it as the owner chooses, so long as the use harms nobody, is a natural right. It does not owe its origin to constitutions. It existed before them. It is a part of the citizen's natural liberty,—an expression of his freedom —guaranteed as inviolate by every American bill of rights."

I believe it is precisely in this area that the zoning board of adjustment and the court below went wrong. They took the position that since cemeteries were not

specifically *included* as a permissible use of land the application must be denied. But applying the true test it seems to me that we must conclude that since cemeteries are not specifically *excluded* and the facts show that according to the tenets, precepts or ecclesiastical law of a religious faith the act of burial is a religious rite, such cemeteries constitute a religious use of land permitted by the ordinance.

I would reverse the court below and direct that the permit be granted.