Gilden Appeal.

Argued January 4, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Lester J. Schaffer,* with him *Robert W. Lentz,* and *Reilly, Fogwell & Lentz,* for appellants.

*John B. H. Carter,* with him *Holbrook M. Bunting, Jr., Edward W. Madeira, Jr., J. Barton Rettew, Jr.,* and *Rocap and Rocap,* and *Pepper, Hamilton & Scheetz,* for appellees.

Opinion by Mr. Justice Musmanno, March 13, 1962:

The Main Line Remedial Education Center, which at present operates a school for "handicapped and exceptional children" in Williston Township, Chester County, has planned to re-situate in Tredyffrin Township, Chester County, where it will have more opportunities and greater facilities for the operation of its establishment. It accordingly has entered into a contract with Dr. and Mrs. Charles T. Gilden to purchase in Tredyffrin Township a tract of land of 4.167 acres on which there stands a large building excellently suited for its purposes, it having been originally built as a school. It is sturdily constructed of stone with walls two feet thick and is screened from the general neighborhood by foliage which imparts to it isolation and attractiveness.

Since the property lies in an area zoned as R-½ Residence it comes within the jurisdiction of the zoning ordinance of the township which reads, inter alia: "Section 251. Use Regulations. A building may be erected, altered or used, and a lot may be used or occupied for any of the following purposes, and for no other: . . . 3. When authorized as a special exception by the Board of Adjustment, Education (including dormitory of an educational institution), religious or philanthropic use, however, a hospital, sanitarium, correctional or penal institution shall not be permitted."

The owners and the purchasers of the land applied for a special exception under this ordinance. The board of adjustment, after a hearing, denied the application and filed the following cursory opinion in explanation of its decision: "After due consideration of all of the testimony in Appeal No. 110, the Board is of the opinion that the applicant is not an educational institution within the meaning of the Zoning Ordinance; rather, it is more akin to a hospital sanitarium

or correctional institution, which uses are expressly prohibited by Section 251 (3) of the Tredyffrin Township Zoning Ordinance. Therefore, it is the decision of the Board of Adjustment on the 13th day of June, 1960, that the application for a special exception be denied."

The Gildens and the Main Line Educational Center (hereinafter referred to as the Center) appealed to the Court of Common Pleas of Chester County, which, after a review of the proceedings before the board, including the testimony and the exhibits, reversed the board, stating: "The findings and conclusions made by the Board of Adjustment of Tredyffrin Township that Main Line Remedial Education Center is not an educational institution and is 'more akin to,' or is, a hospital, sanitarium, or correctional institution, are not supported by the evidence which was before the Board and such findings and conclusions were, therefore, arbitrary. Van Sciver v. Zoning Board of Adjustment, 396 Pa. 646. Being arbitrary, the refusal to grant the special exception sought by Charles J. Gilden, Jr., Agnes W. Gilden, and Main Line Remedial Center was a manifest abuse of discretion by the Board of Adjustment."

A number of property owners in the immediate vicinity of the property (who will hereinafter be referred to as the appellants) have brought the matter before us on a writ of certiorari to resolve the correctness of the lower court's action.

The appellants contend that the court of common pleas exceeded its jurisdiction in substituting its judgment for that of the board which saw and heard the witnesses, whereas the Court only studied the printed record before it. We held in *Lindquist Appeal,* 364 Pa. 561, that "If the board's determination is shown to be arbitrary and contrary to the weight of the evidence, the court is authorized and should make its own ruling."

488

The appellants argue in their brief that "An analysis of the testimony given before the Board establishes that it was justified in concluding that the institution in question was a 'sanitarium' within the meaning of the township ordinance." But the board did not declare the Center to be a sanitarium. The furthest the board would go in this matter was to declare that the Center was "akin to a hospital sanitarium or correctional institution." Kinship is a rather relevant term. A brother is closer to a certain person than a 42nd cousin, yet they are both kin. Even so, the board's concept of genealogical proximity or distance leaves much to be desired. To say that the Center is "akin" to a "correctional institution" is to use language loosely because there is nothing in the Center which is even remotely associated with a disciplinary institution.

The Center is devoted to the education of children from five to twelve years of age.* These children are physically and mentally normal but, somehow, just miss being sufficiently alert to carry on progressively as normal children should. They cannot communicate their ideas with the facility and celerity associated with children of their age, but they are not to be classified as mentally deficient and certainly in no way to be regarded as lacking in proper moral fiber and behavior.

The appellants do not seek to build their case on the board's unfortunate use of the phrase "correctional institution." They take a less ambitious view of the undesirableness (from their point of view) of the Center, and concentrate their attack on the board's use of the word "sanitarium." Here they outstrip the board. The board said the Center was "akin" to a sanitarium. The appellants discard all relativity and say outrightly the Center *is* a sanitarium.

---

* Later, the age limit may be extended to include children up to the age of 16 years.

They fail, however, to point to any evidence to substantiate the proper employment of this term. In *Walker v. Zoning Board of Adjustment*, 380 Pa. 228, 232, this Court said: "A 'sanitarium' is defined in Webster's International Dictionary as "A health station or retreat; an institution for the recuperation and treatment of persons suffering from physical or mental disorders.' "

Also, that: "Miss Walker's institution is not a sanitarium since it is not designed to give, nor does it give, treatment to its students for their physical disorders; it seeks to educate their minds, which are normal, not to cure their physical disabilities. It is a school the same as any other private school except that its students are physically handicapped." and pointed out that "The school is under the supervision, not of the Department of Welfare, which has general supervision of sanitaria, but of the Department of Public Instruction."

This precise situation is repeated in the case at bar. The Center is not under the supervision of the Department of Welfare which has jurisdiction over sanitaria, but under the Department of Public Instruction. The court below found properly that the Center is "licensed by the State Board of Private Academic Schools of the Department of Public Instruction of the Commonwealth of Pennsylvania to operate and conduct an academic school or class in 'Early Childhood Education-Kindergarten; Elementary Education (Grades I-VI); Secondary Education (Grades IX-XII); Tutoring and Speech Therapy.' "

At the hearing it was stated that a representative of the Department of Labor and Industry examined the property for the purposes of ascertaining its state of safety and tentatively approved the property, "subject only to the installation of a two hour fire resistant type of material over the heater in the basement." Counsel

for the Center conceded that this installation would be a "condition precedent before we operate the school."

The motif of the Center is education of the mind, not its medico-therapeutic treatment except insofar as academic tutoring reaches the mental processes. None of the children attending the Center demonstrated an intelligence quotient less than 70. Nonetheless, the children do need special instruction. They have to be taken by the hand and led carefully along the paths of knowledge, the teacher constantly vigilant that the tot does not trip or fall into the pits and snares he cannot see or feel because of emotional instability. This instability is not serious but it is of such a character that it presents a block to normal education by regular teaching methods.

The educational subjects taught at the Center are the basic subjects taught in the public schools, the whole purpose of the Center being to so train the children that they may, after this specialized care and tutoring, take their allotted places in the public schools.

The principal feature of the Center is individualistic supervision and instruction. No class will have more than eight pupils and the ratio of teachers to pupils is approximately one to five. The school hours are from 8:35 a.m. to 3:15 or 3:30 p.m., on a five-day week basis.

The Center's utter dissimilarity to a sanitarium can be seen in the fact that the children do not live at the school, nor even receive their meals there. They carry their own lunches although the Center does supply them with hot soup, milk and ice cream. The children obtain no medical or psychiatric treatment at the school. If such treatment becomes necessary, arrangements have been made for off-premises pediatric, neurological, psychiatric and psychological consultation by specialists not on the staff of the Center, such attention being independent of and in addition to the educa-

tional training given at the Center. There is no nurse or doctor at the Center.

There are hospitals and sanitaria located in the valley of tragedy to care for children who have been struck down by cerebral paralysis and other dread ailments. At the top of the hill is the public school system for physically and mentally normal children. Half way up the hill we find the Center devoted to those children who have the potentialities to become excellent citizens but who, neglected and forsaken, might well tumble down the hill into the institutions for the hopelessly handicapped. The Center trains its children to climb the hill to the normal schools where they will take their places and no one will ever know that they had ever skirted the precipice of disaster.

The appellants cite the case of *Devereux Foundation, Inc., Zoning Case,* 351 Pa. 478. The facts, however, in that case are quite different from those in the case at hand. There we said that "the testimony indicates that the students include neurotics, epileptics and other victims of psychopathic disorders," and that the dormitories in the institution were to be used to accommodate its students, which accommodation was prohibited by the zoning ordinance which barred a " 'structure or other place for accommodating . . . persons mentally deficient, weak or abnormal.' "

A thorough study of the record compels the irresistible conclusion that the court below was entirely justified, in fact, duty-bound, to reverse the decision of the board. While boards of this character perform very meritorious service and are not to be generally criticized because of an occasional error in evaluating the facts before them, it is to be noted, as stated in *Junge's Appeal,* 89 Pa. Superior Ct. 543, 546 that "The authority thus placed in the Board is not an arbitrary one. The discretion vested in the Board is subject to review if abused or not exercised in accordance with the provi-

sions of the Act. The statute does not give the Board power to do whatever they feel inclined to, regardless of the provisions of the statute:"

Since this case is before us on a writ of certiorari, and no testimony was presented before the court of common pleas, our sole function here is to ascertain, by a review of the record, if the board did in fact abuse its discretion, as the court of common pleas said it did. (*Devereux, supra.*)

We find that the record does not substantiate the board's conclusion that the Center is "akin to a sanitarium or correctional institution." Since the appellants now apparently concede that the Center is an educational institution, as in fact it is, and since its sole contention before this Court is that the Center is also a sanitarium, which it is not, a special exception should have been allowed to operate in the R-½ District, as an educational institution. In 28 C. J. S. 834, the word "educational" is defined as follows: "The word taken in its full sense, is a broad, comprehensive term, and may be particularly directed to either mental, moral, or physical faculties, but in its broadest and best sense it embraces them all, and includes, not merely the instructions received at school, college, or university, but the whole course of training—moral, intellectual, and physical."

In the absence of any definition to the contrary in the zoning ordinance, the term "educational institution" as used in the ordinance must be presumed to have been employed in its broadest sense, while the word "sanitarium", being a prohibited use, must be strictly construed, since restrictions on a property owner's right to free use of his property must be strictly construed and all doubts resolved in his favor.

Order affirmed; appellants to bear costs.