500 A.2d 420

**BAKERSTOWN CONTAINER CORPORATION, a corporation, Appellant,**

**v.**

**RICHLAND TOWNSHIP, a political subdivision, Appellee.**

Supreme Court of Pennsylvania.

Argued March 7, 1985.

Decided Nov. 18, 1985.

Stanley M. Stein, Arthur D. Feldman, Pittsburgh, for appellant.

Gene E. Arnold, Weaver, Willman, Simon & Arnold, Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-
MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.
OPINION *

McDERMOTT, Justice.

Bakerstown Container Corporation, appellant, seeks relief
from the denial of a construction permit for a proposed
metal drum reconditioning plant. The Zoning Hearing
Board of Richland Township determined that Bakerstown's
proposed use would not qualify under the relevant permit-
ted use provision of the local ordinance, and denied the
permit. The Court of Common Pleas of Allegheny County
reversed, and the Commonwealth Court subsequently re-
versed that decision.[1] We granted review.

Where, as here, the Court of Common Pleas has not
received evidence additional to that considered by the
Board, our scope of review is limited to determining wheth-
er the Board abused its discretion, committed an error of
law, or made findings of fact not supported by substantial
evidence. *Appeal of M.A. Kravitz Co., Inc.*, 501 Pa. 200,
460 A.2d 1075 (1983); *Fidler v. Zoning Board of Adjust-
ment*, 408 Pa. 260, 182 A.2d 692 (1962). With that in mind,
we turn to an examination of the considerations before the
Board.

The area in which Bakerstown proposes to build its plant
is zoned as Restricted Light Industrial. The controlling
ordinance lists a number of permitted uses for such areas,
but only one is of arguable application herein. Section
10.112 of the Zoning Ordinance of Richland Township autho-
rizes the following use: "Box, cooperage or packaging
materials manufacturing."

There was testimony before the Board that metal drums
would be brought to the proposed plant and stripped of
their residual wastes, following which the drums would be

---

* This opinion was reassigned to this author on September 11, 1985.

1. The Commonwealth Court rejected appellant's contention in a two-
 to-one decision, with an opinion authored by the Honorable Alexan-
 der F. Barbieri. 82 Pa.Cmwlth. 287, 474 A.2d 1218 (1984). The
 Honorable Theodore O. Rogers filed a dissenting opinion.

cleaned, shot blasted, repainted, and, in general, reconditioned and repaired. There was also testimony that residual wastes from the incoming drums would be rinsed from the interior of the drums, turned into paste or sludge, and ultimately disposed of. Finally, there was testimony to the effect that some of the residual waste materials involved would qualify as toxic or hazardous.

After giving careful consideration to the testimony presented, the Board determined that the proposed plant's operations would not qualify as a permitted use under Section 10.112. We are constrained to agree.

 We are mindful that permissive terms in zoning ordinances should be construed expansively, so as to afford the landowner the broadest possible use and enjoyment of his land. *Fidler, supra; Gilden's Appeal,* 406 Pa. 484, 178 A.2d 562 (1962). Moreover, the plain words of a zoning ordinance must be given their usual and ordinary meaning. *Shapiro v. Zoning Board of Adjustment,* 377 Pa. 621, 105 A.2d 299 (1954). Nevertheless, we cannot accept the construction urged upon us by appellant without violating the clear intent of the ordinance. Section 10.112 authorizes "Box, cooperage or packaging materials *manufacturing.*" Notwithstanding that the word "cooperage" embraces repair in its ordinary usage, the term as used in the ordinance has been given a specific context, that of manufacturing. Thus, "(b)ox, cooperage or packaging materials" describe the nature of the manufacturing that is permissible under Section 10.112.

Moreover, while appellant urges that the proposed reconditioning of the metal drums might constitute "manufacturing" under an expansive construction, we must reject this argument. Recently this Court defined the term "manufacturing" in the companion cases of *Bindex Corp. v. City of Pittsburgh,* 504 Pa. 584, 475 A.2d 1320 (1984), and *Tucker v. City of Pittsburgh,* 504 Pa. 580, 475 A.2d 1318 (1984). In *Bindex,* we said,

The concept underlying the definition [of manufacturing] is the transformation of material or things into something

different from that received. The difference cannot be a superficial change that does not alter or change the thing. For example, a cosmetic change performed merely to facilitate the ease of handling, storing, packing or shipping the product or material does not constitute manufacturing. What is required is that the basic materials or goods be given a new identity by the current producer, one which can be easily traced to such producer.... When labor is used in conjunction with skill to produce a different product than the original, one with a new identity, manufacturing has occurred.

*Bindex, supra* 504 Pa. at 587–588, 475 A.2d at 1322 (footnote omitted). Or, to put it another way, "[t]he process must alter or change the thing itself into something different, new and useful," *Tucker,* 504 Pa. at 583, 475 A.2d at 1320. *See Golden Triangle Broadcasting, Inc. v. City of Pittsburgh,* 483 Pa. 525, 397 A.2d 1147 (1979); *Commonwealth v. Berlo Vending Company,* 415 Pa. 101, 202 A.2d 94 (1964); *Philadelphia School District v. Rosenberg,* 402 Pa. 365, 167 A.2d 259 (1961); *Philadelphia School District v. Parent Metal Products, Inc.,* 402 Pa. 361, 167 A.2d 257 (1961); *Norris Brothers v. Commonwealth,* 27 Pa. 494 (1856).

We are unpersuaded that the plant proposed by Bakerstown would transform a barrel into anything but a barrel. Flushing it of toxic residue, undenting it, shot blasting it, resealing it, and repainting it will not make it something other than a barrel. Absent that character of "manufacturing," we agree with the Board and sustain their rejection of appellant's petition.

The order of the Commonwealth Court is affirmed.

PAPADAKOS, J., did not participate in the consideration or decision of this case.

LARSEN, J., joins in the majority opinion and files a concurring opinion.

FLAHERTY, J., files a dissenting opinion in which ZAPPALA, J., joins.

LARSEN, Justice, concurring.

I agree with the majority that the use proposed by appellant Bakerstown Container Corporation does not constitute "manufacturing" as that process has been defined by this Court.[1] I write separately though to express my belief that the decision of the Zoning Hearing Board (Board) that the proposed use does not qualify as a permitted use is sustainable on another important ground.

The testimony presented to the Board established that, at a minimum, between 30% and 40% of the tight head drums brought to the premises for cleaning will contain residual waste materials that are toxic and hazardous. The appellant chooses to call the proposed operation "barrel reconditioning." From the evidence the operation actually involves the discharging and depositing of significant amounts of hazardous wastes on the premises. Indeed, the Board found that one of the primary concerns of the proposed business was its function as a respository for toxic and hazardous wastes.[2]

The disposition of toxic and hazardous wastes is a pressing problem facing industry, government and citizens in Pennsylvania and nationwide. Such wastes, deliberately or accidentally deposited in the ground in sufficient quantity, may result not only in serious environmental damage, but also in posing high-risk health hazards that could cause

1. *Bindex Corp. v. City of Pittsburgh,* 504 Pa. 584, 475 A.2d 1320 (1984) and *Tucker v. City of Pittsburgh,* 504 Pa. 580, 475 A.2d 1318 (1984).

2. Among the observations made by members of the Zoning Board, Raymond Kendrick, Vice-Chairman of the Board stated:

"[I]n other words anybody that would come into that district could handle any type of material they wanted to and you couldn't stop them, because you've already permitted what I say has nothing to do with being a cooper. The [Bakerstown Container Corporation] is handling hazardous, toxic waste and it doesn't belong in a restricted light industrial district ... I don't think a cooper is a drum [reconditioner], bringing in hazardous waste, toxic materials next to a residential community." Page 61a, Hearing Transcript. Norbert Kulbacki, Chairman of the Zoning Board stated:

"We are talking about reconditioning the [barrels] with a product coming off of them that may be not this year, but years forward may be hazardous to these people." Page 66a, Hearing Transcript.

disease, disfigurement or even death to present and future residents of the area. Additionally, the affected land could be rendered useless and worthless and no longer revenue producing for the local government. It is mandatory for local government to prudently consider these factors in any plan presented to it for the use of property which involves the introduction of hazardous wastes. The Zoning Board's consideration of these factors in the instant case was proper. On this additional basis the Board's decision excluding the proposed use is not an abuse of discretion, does not constitute an error of law and is supported by substantial evidence.

FLAHERTY, Justice, dissenting.

The Zoning Hearing Board of Richland Township denied a construction permit sought by the appellant, Bakerstown Container Corporation, for construction of a metal barrel reconditioning plant in an area of Richland Township zoned as a Restricted Light Industrial District. The relevant permitted use provision of the Richland Township zoning ordinance, Section 10.112, sets forth the following authorized use: "Box, *cooperage* or packaging materials *manufacturing*" (emphasis added). In denying the construction permit, the Board held that the proposed metal barrel reconditioning plant did not fall within this provision of the Township's zoning ordinance, and the sole issue in the instant appeal is whether the Board erred in so holding.

The scope of review, in a case such as this where the Court of Common Pleas has not received evidence beyond that considered by the Board, is to determine whether the Board abused its discretion, committed an error of law, or made findings of fact which are not supported by substantial evidence. *Valley View Civic Ass'n v. Zoning Board of Adjustment*, 501 Pa. 550, 554–555, 462 A.2d 637, 639–640 (1983); *Appeal of M.A. Kravitz Co., Inc.*, 501 Pa. 200, 211, 460 A.2d 1075, 1081 (1983); *Fidler v. Zoning Board of Adjustment*, 408 Pa. 260, 262, 182 A.2d 692, 693 (1962). Applying this standard, it is clear that the decision of the

Board in the present case was properly reversed by the Court of Common Pleas.

The terms "cooperage" and "manufacturing" are not defined in the instant zoning ordinance. When terms are not defined in permissive use provisions of a zoning ordinance, their usual and ordinary meanings are to be applied, so as to accord the landowner the benefit of the least restricted and broadest use and enjoyment of his land. See *Gilden Appeal*, 406 Pa. 484, 492, 178 A.2d 562, 566 (1962); *Shapiro v. Zoning Board of Adjustment*, 377 Pa. 621, 627–628, 105 A.2d 299, 302 (1954). Restrictions on a landowner's right to the free use of his property must be strictly construed and all doubts must be resolved in the landowner's favor. *Gilden Appeal*, 406 Pa. at 492, 178 A.2d at 566. As this Court stated in *Fidler v. Zoning Board of Adjustment*, 408 Pa. at 265, 182 A.2d at 695, "[R]estrictions must not be so construed as to fetter the use of land by implication. The permissive widest use of the land is the rule and not the exception, unless specifically restrained in a valid and reasonable exercise of the police power."

This approach to the interpretation of zoning ordinances reflects the basic premise that ownership of land carries with it certain essential rights in its use, and these rights are to be encumbered only to the extent clearly necessary to assure protection for the interests of neighboring property owners and the general welfare of the community. See *Hopewell Township Board of Supervisors v. Golla*, 499 Pa. 246, 254–257, 452 A.2d 1337, 1341–1343 (1982) ("substantial deference to the preservation of rights of property owners"). As this Court stated in *Lord Appeal*, 368 Pa. 121, 125–126, 81 A.2d 533, 535 (1951),

"[A]n owner of property is still entitled in Pennsylvania to certain unalienable constitutional rights of liberty and property.

... Restrictions imposed by zoning ordinances are, however, in derogation of the common law and (at times) of the liberties, rights, and privileges guaranteed by the

° Constitution of the United States and the Constitution of Pennsylvania and therefore must be strictly construed."

Applying these principles to the instant case, it is clear that the metal barrel reconditioning plant proposed by Bakerstown Container Corporation falls squarely within the cooperage/manufacturing use authorized by the zoning ordinance. The activities to be conducted at the plant would consist of the following. Metal barrels, which have been used at various industrial locations, would be brought to the plant and subjected to a cleaning process, whereby the barrels would be flushed with a solution that removes residues. Most of the barrels brought to the plant would be empty, though some would have one inch or less of residual materials remaining in their bottoms. Dents would then be removed from the barrels, following which the barrels would be shot blasted, the latter process being similar to sand blasting. Finally, the barrels would be repainted, resealed, and tested for leaks. In short, the plant would provide a complete reconditioning operation for metal barrels, this operation being a continuation of similar processes which Bakerstown Container Corporation already conducts, as a pre-existing use, at a site on adjacent land in the same township.

As discussed supra, terms that have not been defined in a zoning ordinance are to be given their usual and ordinary meanings, so as to permit the landowner to exercise the broadest possible use of his property. In WEBSTER'S NEW WORLD DICTIONARY (2d ed. 1979), the term "cooperage" is defined as "the work of a cooper," and the word "cooper" is defined as "a person whose work is making or repairing barrels and casks." See also, THE RANDOM HOUSE DICTIONARY (1980). Applying these definitions, it is beyond question that the barrel reconditioning plant heretofore described would be engaged in the "cooperage" business, since the plant's sole purpose is to repair used barrels in such a manner as to make them appear and function as new barrels.

An examination of the record of the proceedings before the Board reveals that the Board, in holding that the proposed plant would not be engaged in the "cooperage" business, was improperly motivated by a desire to exclude the plant from the community. Specifically, the Board expressed its overriding concern that residues flushed from certain barrels during the first stage of the reconditioning process might be hazardous to the community. Disposal of such residues is, however, closely regulated by other governmental agencies, including the United States Environmental Protection Agency, the Pennsylvania Department of Environmental Resources, and the County Health Department. Such agencies regulate and monitor the existing operations of Bakerstown Container Corporation in Richland Township, and the proposed new plant would likewise be subject to their authority. Furthermore, the fact that residues must be removed from barrels before they can be repaired and refinished is one that would certainly be expected, based upon the ordinary and usual activities that a cooper must engage in, and must have been contemplated by the zoning authority at the time the ordinance was enacted. It is likewise to be noted that other uses authorized by the zoning ordinance also necessarily involve the presence of and disposal of hazardous residues. Such uses include cleaning and dyeing facilities, research and development laboratories, film processing facilities, pharmaceutical manufacturing plants, and other uses.

In attempting to regulate the presence of hazardous waste materials in the community, by banning from the community a plant that would plainly have been engaged in the business of reconditioning barrels, the Board diverged from its proper role. The Board's realm is not in the field of waste management, and, when called upon to determine whether the instant construction permit should be issued, the Board's sole inquiry should have been limited to the question of whether the proposed facility conformed to a permitted use set forth in the zoning ordinance. Instead, the Board improperly assumed the role of an environmental

regulatory agency, and for reasons unrelated to the plain language of the zoning ordinance declined to hold that the proposed plant would be engaged in the "cooperage" business.

The manner in which the reconditioning of used barrels would be conducted at the new plant would also be a "manufacturing" process, for purposes of the provision in the zoning ordinance which permits "Box, cooperage or packaging materials *manufacturing*" (emphasis added). The term "manufacturing" has been variously defined in a number of statutory contexts. Some definitions have accorded the term a meaning which encompasses only the making of essentially new articles, as opposed to the making of articles that undergo only superficial modifications in the production process. See *Golden Triangle, etc. v. City of Pittsburgh*, 483 Pa. 525, 397 A.2d 1147 (1979) (Business Privilege Tax case, involving exemption for "manufacturing"). Other definitions have been broad, according the term a meaning which encompasses the making of less substantial changes to existing articles. Industrial Homework Law, 43 P.S. § 491–3(g) (definition of "manufacture" includes "repair"). These definitions are inapposite, however, to the present controversy, since definitions of such terms must be considered *in light of the context that gives rise to the need for rendering a definition.* See *Tucker v. City of Pittsburgh*, 504 Pa. 580, 583, 475 A.2d 1318, 1320 (1984). Considerations governing the definition of "manufacturing," where that term appears in tax statutes or in regulatory legislation, are not the same as those which are applicable to the interpretation of zoning ordinances.

As discussed supra., in the context of a zoning ordinance which contains no definition of an essential term, here the term "manufacturing," we are constrained to accord the term its usual and ordinary meaning, allowing the landowner the least restricted use of his land. The term "manufacture" is defined in WEBSTER'S NEW WORLD DICTIONARY (2d ed. 1979) as "the making of goods and articles by hand or, esp., by machinery, often on a large scale and with

division of labor." See also, THE RANDOM HOUSE DIC-TIONARY (1980); BLACK'S LAW DICTIONARY (4th ed. 1968). The proposed plant would, through the series of operations heretofore described, produce reconditioned metal barrels. Making reconditioned barrels is a manufacturing process, and there is no merit in the contention of Richland Township that "manufacturing" should be construed as permitting *only brand new articles* to be made, rather than permitting used articles to be made to appear and *function* as new ones, for to adopt such a construction would needlessly restrict the ordinary and usual meaning of the term "manufacture" and would be contrary to the principles of interpretation requiring that the broadest permissible construction be accorded permissive use provisions.

Having determined, therefore, that the construction permit sought by Bakerstown Container Corporation is for a use authorized by the Richland Township zoning ordinance, I would reverse the Order of the Commonwealth Court.

ZAPPALA, J., joins this dissenting opinion.