**CAMP RAMAH IN THE POCONOS, INC., Appellant,**

v.

**ZONING HEARING BOARD OF WORCESTER TOWNSHIP and Worcester Township.**

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 1999.
Decided Jan. 7, 2000.

---

Michael Yanoff, Lansdale, for appellant.

Joseph M. Bagley, Blue Bell, for appellee, Township of Worcester.

Before SMITH, J., LEADBETTER, J., and MIRARCHI, Jr., Senior Judge.

LEADBETTER, Judge.

Camp Ramah appeals from the order of the Court of Common Pleas of Montgomery County (common pleas court), which affirmed the decision of the Zoning Hearing Board of Worcester Township (ZHB). The ZHB denied Camp Ramah's request for a special exception to develop 30 acres in the agricultural district for use as a summer day camp for children and a year-round weekend retreat for adults. We affirm in part and reverse in part.

Camp Ramah is a non-profit corporation affiliated with the Conservative Jewish Movement and is devoted to providing Jewish educational experiences. The Camp is the equitable owner of two adjacent parcels of land, a 25 acre lot on which is located a farmhouse, barn and outbuildings and a 4.6 acre unimproved lot that provides access to Skippack Pike for the larger parcel. Both parcels are located in the agricultural district in which the ordinance permits agricultural and residential uses by right and recreational, religious and educational uses by special exception. Worcester Code § 150–11. The ordinance provides that a religious use shall be set back 150 feet in the front, rear and side yards. Worcester Code § 150–13D. The set back for educational and recreational use is 350 feet. *Id.* In order to accommodate their preferred development plan, which shows 150 foot set backs, Camp Ramah sought approval as a religious use but, alternatively, requested approval as an educational or recreational use. The Camp also requested ZHB approval, either as an interpretive ruling that the plan complied with the ordinance or by grant of a variance, to permit placement of the stormwater detention basin and septic system shed on the smaller lot and to permit the construction of only 106 parking spaces.

Following a hearing, the ZHB denied the special exceptions and variances for the proposed development. The ZHB concluded as a matter of law that; (1) the children's day camp is permitted as a recreational use if it conforms to the 350 foot set backs, (2) the adult retreat does not fit within any of the uses permitted by special exception because it is more like a hotel/rooming house/tourist house, and (3) placement of the basin, shed and number of parking places does not comply with the ordinance and Camp Ramah did not prove entitlement to a variance. The common pleas court affirmed the ZHB decision and Camp Ramah filed this appeal.

Camp Ramah contends that the ZHB erred: (1) in failing to find that their development proposal qualifies under the ordinance as a religious use; (2) in failing to conclude that the proposed placement of the water detention basin and septic system shed complies with ordinance requirements or, in the alternative, erred in refusing a variance; (3) in failing to approve, by right or by variance, the plan for 106 parking spaces.

 The common pleas court did not take additional evidence, therefore, our review looks to whether the ZHB findings are supported by substantial evidence and the decision is free from errors of law. *Hertzberg v. Zoning Bd. of Adjustment of Pittsburgh,* 554 Pa. 249, 256, 721 A.2d 43, 46 (1998). In a request for a special exception the burden of proof lies with the applicant. The applicant must prove that the proposed use qualifies for a special exception under the terms of the ordinance and that the development proposal complies with the applicable ordinance requirements. *Szewczyk v. Zoning Bd. of Adjustment of City of Pittsburgh,* 654 A.2d 218 (Pa.Cmwlth.1995).

██ In the present case, the parties disagree as to whether the children's camp is entitled to special exception approval as a religious use subject to the 150 foot setback requirement or as a recreational use requiring a perimeter setback of 350 feet. The ZHB finding that the children's camp is a recreational use is adequately supported by evidence that the daily activities in the form of various sports, arts and crafts, nature hikes, and swimming would be basically the same as any other children's day camp. The fact that the camp would be operated by and for practitioners of a particular religion with the inclusion in the camp program of attendance at synagogue and religious educational experiences does not change the recreational nature of the use of the property. The ZHB and common pleas court properly focused on the nature of the physical activities rather than the identity of the user, or upon the religious focus through which Camp Ramah utilizes those activities to provide religious educational experience. *See Russian Orthodox Church Appeal,* 397 Pa. 126, 152 A.2d 489 (1959); *Evans v. Zoning Hearing Bd. of Easttown Tp.,* 40 Pa.Cmwlth. 103, 396 A.2d 889 (1979). Although, for instance, the children may be provided instructions in Hebrew, nonetheless they are still playing ball. The greater set back requirement which is the only practical consequence of the distinction between recreational/educational and religious usages is justified by the need for more of a buffer between these activities, particularly children at play, and streets or neighboring properties. This need is not lessened by the overall religious purpose of the camp, nor because during some periods of the day the children engage in solely religious activities, i.e., prayer. In other words, because the proposed development would impact the neighborhood and the children in the same way as a secular camp, Camp Ramah must adhere to the larger setback required for a recreational use.

██ Camp Ramah contends that the ZHB erred in finding that the Family Life Retreat Center did not fall within any of the categories of use permitted by special exception. Camp Ramah maintains that the retreat center is a religious use because it would be used solely by Jewish groups for weekend retreats devoted primarily to prayer and religious instruction and for multi-day instructional programs in Jewish laws, customs and practices. While these activities are religious in character, the use of the retreat facility would not be limited to those activities properly characterized as religious in nature. Jules Einhorn, president of the commission in charge of running the camp/retreat facility, and Rabbi David Ackerman, rabbi of the congregation where the children's camp is presently in operation, testified that the recreational facilities would be available for use by the adult groups. Moreover, unlike the children's camp, the retreats would not be planned or directed by Camp Ramah, but by the groups themselves. No set program or activities would be required. Einhorn and Ackerman described a facility that would provide overnight lodging for 125 persons, as well as meals and meeting rooms that may be leased for use by Jewish groups other than the Camp Ramah organization. This evidence supports the conclusion that, in terms of its actual use and physical layout, the proposed retreat is like a hotel with conference facilities. The anticipated religious activities do not transform the overnight lodging facility, which is not permitted in the agricultural district, into a religious use for which a special exception must be granted.

 With respect to the location of the septic system shed, stormwater basin and the number of parking spaces, it is Camp Ramah's burden to establish that these aspects of the development plan either conform to the applicable objective requirements of the ordinance or that the Camp is entitled to a variance from one or more of these requirements. *Appeal of*

*Neill,* 160 Pa.Cmwlth. 169, 634 A.2d 749, 751 (1993). The ZHB and common pleas court concluded that Camp Ramah established neither. This is correct with respect to the 50–foot side yard requirement for the shed under Worcester Code §˙ 150–13. The septic system shed for the recreational camp does not qualify as a building or structure accessory to a single-family residential use so as to be permitted within 40 feet of the rear or side property lines under Code § 150–13B(2)[1] or under § 150–177B(1)[2]. Therefore, to locate the shed as proposed on the plan, Camp Ramah must establish the hardship prerequisite to a dimensional variance. *See Hertzberg,* 554 Pa. 249, 721 A.2d 43 (holding that where dimensional variance requested courts may consider multiple factors including economic detriment, financial hardship to comply with ordinance and characteristics of surrounding neighborhood). The property is a large piece of ground and the record is devoid of evidence that it could not accommodate a development plan that conformed to the ordinance dimensional requirements without undue hardship. Therefore, the trial court properly found that the record did not establish hardship to justify a variance for the location of the shed.

■ With respect to the stormwater basin, Worcester Code § 150–203C permits placement of the basin within the designated setbacks but the basin may occupy no more than 15% of the required yard area.[3]

Camp Ramah contends that the ordinance permits calculation of this 15% limitation by including the area of the entire perimeter yard area of the 30–acre tract. If the limitation is applied to the total perimeter yard, the basin location conforms to the ordinance. The ZHB and common pleas court rejected this interpretation. The ZHB concluded that the ordinance limited encroachment by the basin into the particular yard area, i.e., side, rear or front yard, into which the basin would intrude on the 4.6–acre lot. After careful consideration of the ordinance definition of yard area set forth in § 150–9 and the language of § 150–203C, we can discern no support for this restrictive view of what comprises the yard area referred to in § 150–203. The ordinance defines "yard" as; "An open unoccupied space on the same lot with a building or other structure or use, open and unobstructed from the ground to the sky, except for public utility lines or facilities, landscaping and parking as restricted by the applicable zoning district." Worcester Code § 150–9. The 15% encroachment limitation is a more general limitation applying to the "required yard area" in total; not the required side, rear or front yard area. Construing the plain language of the ordinance, *Bakerstown Container Corp. v. Richland Tp.,* 508 Pa. 628, 630, 500 A.2d 420, 421–22 (1985), and affording Camp Ramah the benefit of the less restrictive interpretation, 53 P.S. § 10603.1;[4] *Upper Salford Tp. v. Collins,*

1. Worcester Code § 150–13B(2) states:

 A separate structure accessory to a single-family residential use may be erected in the rear yard not closer to rear or side property lines than forty (40) feet.

2. Worcester Code § 150–177 states, in pertinent part:

 Accessory uses and structures authorized in this chapter include the following:
 A. Agricultural uses: ...
 B. Single-family detached residential uses: private garage, private greenhouse, private parking space, shelter for domestic pet, private storage shed, private swimming pool, ...

 (1) All accessory structures shall be located ... at least forty (40) feet from any side or rear property line....

3. Worcester Code § 150–203C. regulates detention basins in yard areas as follows:

 Nonresidential districts. In all nonresidential districts, no part of any detention basin shall occupy more than fifteen percent (15%) of the required yard area, measured as to linear dimension or surface area. No detention basin shall be located within fifty (50) feet of any building, whether said building is on the same lot or on any adjacent lot.

4. Section 603.1 of the Pennsylvania Municipalities Planning Code, Act of July 31, P.L.

542 Pa. 608, 612, 669 A.2d 335, 337 (1995), we conclude that the basin encroachment limitation must be calculated against the total perimeter yard area of the entire tract.

■ Camp Ramah asserts that the proposed 106 parking spaces would exceed the parking need anticipated for the proposed use as a camp and retreat. However, the Township contends that 166 parking spaces are required for the children's camp and an additional 210 spaces would be needed for the retreat facility bringing the total to 376 spaces. The parties agree that the ordinance does not specifically establish the parking requirements for the proposed children's day camp and the adult retreat. Both parties point to the parking requirements in § 150–153B(1) for church, school or auditorium parking as the most nearly applicable. Inasmuch as the adult retreat is not a permitted use, there is no need to speculate as to its parking requirements. The parking requirements for the day camp are appropriately determined under § 150–153B(1), which requires one space for every three seats provided for assembly. The nature of camp activities does not necessarily result in a facility with assembly seating for all attendees and staff. Nevertheless, Camp Ramah would satisfy the parking space requirement established by § 150–153B(1) by providing one space for every three persons (attendees and staff) assembled at the camp. The evidence established that Camp Ramah expected a maximum of 350 campers and 150 staff members to assemble at the

day camp. Pursuant to § 150–153B(1), the ZHB properly concluded that Camp Ramah would need to provide 166 parking spaces for the proposed children's camp.

Accordingly, we affirm as to the denial of Camp Ramah's application for special exception, affirm as to the denial of the request for variances and reverse as to the ordinance interpretation concerning placement of the stormwater basin.

### O R D E R

AND NOW, this 7th day of January, 2000, the order of the Court of Common Pleas of Montgomery County in the above captioned matter is hereby affirmed in part and reversed in part in accordance with the foregoing opinion.

SMITH, Judge, dissenting.

I respectfully disagree with my learned colleagues' conclusion that the land use proposed by Camp Ramah is not religious. Camp Ramah desires to use its 30–acre property as a Jewish Day Camp and Family Life Retreat Center that would function as a religious retreat for children and adults. The day camp would teach many of the aspects of the Jewish faith to Jewish children by incorporating them into their daily lives while campers. See Decision of the Zoning Hearing Board of Worcester Township (Board), Finding of Fact No. 7. Prayer services will be scheduled throughout the day, and campers will adhere to a kosher diet and speak in Hebrew whenever possible.[1] Id. Camp facilities include

---

805, added by Section 48 of the Act of December 21, 1988, P.L. 1329.

1. Rabbi Steven M. Brown, who has been involved in the Camp Ramah program as camper, division head, teacher and counsel/trainer, described the program as follows in his testimony before the Board:

> [It's] an understanding that Jewish life encompasses all of living, and the way we teach it to children is to put them in an environment in which their entire life experience is seen through Jewish colored lenses.

That from the time you begin the day in the morning until the time you go to sleep at night, or from the time you come to camp until you leave, you are [im]mersed in Jewish living and seeing the world through Jewish eyes, the theory being that there's really no part of life that Jewish tradition and practice doesn't speak about.

So, if you're playing ball on the ballfield, the way to treat a fellow on the ballfield, another person, treating them in God's image is a religious activity.

Praying two or three times a day is of course a religious activity.

an outdoor synagogue. Finding of Fact No. 9. In her testimony before the Board, Jennifer Stofman, the director of the Ramah Day Camp, provided a detailed description of the day camp's scheduled program of worship and religious instruction, and she explained how the recreational activities are an important, but ancillary, part of that religious program.

The Family Life Retreat Center will host retreats focused on religious prayer and religious education conducted by rabbis, counselors and teachers provided by Camp Ramah. The center would be available to various groups, including families, single groups, college age groups and adult groups, but only those of the Jewish faith. Finding of Fact No. 12. Camp Ramah operates under the auspices of the Jewish Theological Seminary, which would set the overall educational policy of the facility. Finding of Fact No. 7.

The majority concludes that the proposed retreat is not a religious land use because the retreat would share certain characteristics in common with a recreational facility. However, it is not uncommon for religious and recreational land uses to share common characteristics. Therefore, the majority's approach is not the appropriate test to apply. Rather, the Supreme Court set forth the appropriate test in *Russian Orthodox Church Appeal*, 397 Pa. 126, 152 A.2d 489 (1959). This Court must look to the general purposes of zoning and the zoning ordinance in question as a whole and ascertain whether the enactors of the ordinance intended to permit the proposed use as a religious use. *Id.* This Court's decision must be based on express law rather than any subjective understanding of what may be properly labeled a "religious" practice. *Id.; Church of the Saviour v. Zoning Hearing Board of Tredyffrin Township*, 130 Pa.Cmwlth. 542, 568 A.2d 1336 (1989).

Section 150–8(B) of the Worcester Township Zoning Ordinance provides that undefined words "shall have the meaning of common or standard usage." Trial court opinion, p. 6. The Board's findings clearly demonstrate that Camp Ramah proposes to construct a retreat where children and adults of the Jewish faith can gather, learn about their religion and worship. A retreat principally designed for members of one faith to learn about their religion is "religious" in the common usage. Thus, I believe that the proposed day camp and retreat is exactly the kind of religious use that the enactors of the ordinance intended. Moreover, any ambiguity in the terms of the ordinance should be construed in the landowner's favor. *Church of the Saviour* (citing *In re Shirk*, 114 Pa.Cmwlth. 493, 539 A.2d 48 (1988)). Accordingly, I would reverse the trial court's order affirming the denial of a special exception to Camp Ramah. Camp Ramah should be permitted to develop the Jewish Day Camp and Family Life Center as a religious use.

---

Eating kosher food, observing the dietary laws, is a religious activity.

By taking children out of their homes, many of whom have come from homes that aren't particularly knowledgeable, Jewishly, or observant, Jewishly, or conversely who observe these laws and practices and want them reinforced all year long, Ramah has really been transformational in creating young, involved, committed, knowledgeable American Jews who care both about being Jewish and care about contributing to general American society.

Notes of Testimony, May 27, 1998, pp. 47–48.