IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Paul Marshall and Julie Marshall :
:
v. : No. 1591 C.D. 2016
: ARGUED: June 8, 2017
Charlestown Township Board of :
Supervisors and Cameron J. :
Cloeter and Nancy H. Cloeter :
:
Appeal of: Charlestown Township :
Board of Supervisors :


BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE JULIA K. HEARTHWAY, Judge
HONORABLE DAN PELLEGRINI, Senior Judge


OPINION BY JUDGE HEARTHWAY FILED: August 29, 2017


Charlestown Township Board of Supervisors (Board) appeals from the final order of the Court of Common Pleas of Chester County (trial court), entered August 22, 2016, which reversed the Board's decision denying Paul Marshall's and Julie Marshall's (together, Marshalls) conditional use application proposing to use their property for farm-to-table activities at nighttime. The trial court also imposed conditions on the nighttime use. We reverse.

The Marshalls own a 12.6 acre parcel of land located at 12 Alexis Lane (also known as 2226 Charlestown Road) (Property) in Charlestown Township (Township). (Board's Findings of Fact (F.F.) No. 1.) The Property is located in the FR-Farm Residential zoning district and is improved with a historic farmhouse and a historic bank barn. (F.F. Nos. 6-7.) The Marshalls reside in the

farmhouse. (F.F. No. 9.) The Property shares a private residential driveway, Alexis Lane, with two adjacent properties pursuant to a common driveway easement contained in a 2005 subdivision plan. (F.F. Nos. 15-16, 128.) Both of those adjacent properties, 15 and 17 Alexis Lane, are owned by Cameron Cloeter and Nancy Cloeter (together, Cloeters), who reside in a single-family dwelling at 15 Alexis Lane. (F.F. Nos. 10-11, *see* F.F. No. 15.)

On November 18, 2013, the Marshalls filed a conditional use application with the Board, seeking approval for farm-to-table educational culinary workshops to be conducted on the Property in the barn, with children's workshops during the day and adult workshops at night. (F.F. Nos. 24, 37.) The application sought conditional use approval pursuant to section 27-402.C(4) of the Township's zoning ordinance for a "cultural, educational, religious, charitable or philanthropic use," and pursuant to sections 27-402.C(9) and 27-1619.2(A)(5) of the Township's zoning ordinance for the adaptive reuse of a historic resource as a "museum, nature center, public garden, or other similar educational and cultural facility." (Board's decision at 1.) Several individuals and entities appeared at the hearings before the Board and were granted party status, including the Township, which was represented by counsel separate from the Board's counsel, and the Cloeters, who had their own counsel.

After multiple hearings, the Board issued a decision and order on March 15, 2015. The Board denied the application as to the adult nighttime workshops, finding that the proposed evening use was more similar to a restaurant use rather than a true educational use. The Board approved the daytime use with

2

conditions. The Marshalls timely appealed the Board's decision and order to the trial court, arguing, among other things, that the Board erred in denying the nighttime use. The Marshalls named the Board as appellee. The Cloeters intervened. The Township did not seek to intervene. The Board's status as a party was noted on the trial court's docket. (*See* R.R. at 1a-4a.) Further, the Board participated in all aspects of the proceedings before the trial court, including oral argument on the Marshall's land use appeal and filing various pleadings, including a brief in opposition to the appeal. (*See* R.R. at 1a-4a, trial court 4/1/16 opinion at 1.)

On April 1, 2016, the trial court issued an order, which, among other things, sustained the Marshalls' appeal and thereby allowed the proposed nighttime use (adult workshops), subject to the trial court's subsequent imposition of conditions. The Board then filed an Application for Reconsideration, asking the trial court to remand the matter back to the Board for the imposition of new conditions. The trial court denied the Application for Reconsideration. Subsequently, on August 22, 2016, the trial court issued a final order, imposing eight new conditions on the nighttime use and incorporating by reference its prior orders. The Board then appealed from the trial court's August 22, 2016, final order to this Court.

Before we can address the issues raised by the Board, we must address the Marshalls' challenge to the Board's standing to appeal from the trial court's order to this Court. The Marshalls argue that because the Board was the adjudicative body below, it lacks standing to appeal the trial court's order reversing

its decision. The Marshalls admit they are not aware of any case law directly on point. Nonetheless, they analogize this situation to a special exception decided by a zoning hearing board, and Pennsylvania law generally concerning zoning hearing boards, in which it is well-settled that a zoning hearing board has no standing to appeal from a final order of a court of common pleas to this Court. *See Appeal of Lansdowne Borough Board of Adjustment*, 170 A. 867 (Pa. 1934). Additionally, relying on *Gilbert v. Montgomery Township Zoning Hearing Board*, 427 A.2d 776 (Pa. Cmwlth. 1981), and *Brendel v. Zoning Enforcement Officer of Borough of Ridgway*, 780 A.2d 750 (Pa. Cmwlth. 2001), the Marshalls state the law is clear that a municipality has to appear as an appellant or intervenor before the trial court in order to have standing to appeal to this Court. Finally, the Marshalls maintain that Section 913.2 of the Pennsylvania Municipalities Planning Code[1] (MPC) (concerning conditional uses and the governing body's function) and case law recognize a distinction between the Board and the Township and that this distinction must be maintained throughout the appeal in order to avoid any conflict of interest.

On the other hand, the Board agrees that a zoning hearing board does not have standing to appeal a decision of a court of common pleas to this Court; however, the Board contends that a "governing body" such as itself is not so constrained. The Board points out that it was noted as a party on the trial court's docket, and therefore it had no reason to file a notice of intervention, which would

---

[1] Section 913.2 of the Municipalities Planning Code, Act of July 31, 1968, P.L. 805, added by Section 93 of the Act of December 21, 1988, P.L. 1329, *as amended*, 53 P.S. § 10913.2.

have been redundant. The Board also argues that the Marshalls should be estopped from making their argument because the Board participated in all aspects of the proceedings before the trial court without objection.

We disagree with the Marshalls that the Board does not have standing. While we recognize there are similarities between a special exception and conditional use application, we refuse to extend case law applicable to zoning hearing boards to the situation here because of fundamental distinctions between a zoning hearing board and a board of supervisors. Significantly, unlike a zoning hearing board, whose only role is to act as an adjudicatory body,[2] a board of supervisors is in a unique position in that it has dual roles. A board of supervisors serves as an adjudicatory body when deciding a conditional use application,[3] and as the governing body of the municipality.[4] As the governing body, the Board represents the Township. Indeed, "a second class township can only operate through its governing body, a board of supervisors." *Mollick v. Township of Worcester*, 32 A.3d 859, 872 (Pa. Cmwlth. 2011). Thus, in its role as the governing body of the municipality, the interests of the Board and the Township are effectively one and the same. This is unlike a zoning hearing board, which,

---

[2] *See* Section 909.1 of the MPC, Act of July 31, 1968, P.L. 805, added by Section 87 of the Act of December 21, 1988, P.L. 1329, *as amended*, 53 P.S. § 10909.1(a) (describing jurisdiction of zoning hearing board).

[3] ROBERT S. RYAN, PENNSYLVANIA ZONING LAW AND PRACTICE § 5.1.5 (2001); *see* Section 913.2 of the MPC, 53 P.S. § 10913.2 (stating that the governing body shall hold hearings on and decide requests for conditional uses).

[4] *See* Sections 601 and 607 of The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§ 65601 & 65607. We take judicial notice that Charlestown Township is a second class township. *See* http://dced.pa.gov/local-government/municipal-statistics/municipalities (last visited July 28, 2017).

while it is a municipal agency, it has no authority to act on behalf of the municipality itself. Therefore, a municipality necessarily must intervene in an appeal from a zoning board's decision. *See National Development Corporation v. Township of Harrison*, 438 A.2d 1053 (Pa. Cmwlth. 1982).

We recognize that in the context of a conditional use hearing, Section 913.2 of the MPC and case law treat the governing board and the municipality as separate entities. This is necessary, however, in the context of a conditional use hearing before the board of supervisors, because at that level, the board cannot simultaneously fulfill both of its roles as an adjudicator and as the governing body representing the municipality. At that level, the board and the municipality must be treated as separate entities, because the board must avoid even the appearance of bias or impropriety. *See Newtown Township Board of Supervisors v. Greater Media Radio Company*, 587 A.2d 841 (Pa. Cmwlth. 1991) (holding that township solicitor should not have been permitted to act as both legal advisor to the board and as adversary to oppose a conditional use application). Once an appeal is taken to other adjudicatory bodies, however, it is not necessary for that distinction to be maintained. In that situation, the board of supervisors no longer has a role as an adjudicatory body and now can fulfill its role as the governing body; the only body through which the township can operate. *See Mollick*. This, too, is unlike land use appeals from zoning hearing board decisions. In that situation, although the zoning hearing board is no longer actually adjudicating the dispute, the municipality must still intervene because it cannot operate through its zoning hearing board.

6

Accordingly, we refuse to extend cases involving zoning hearing boards or zoning officials, such as *Lansdowne*, *Gilbert* and *Brendel*, to the situation here.[5] Although we decline to extend our express holding in *Gilbert*, our conclusion under the circumstances here is consistent with our reasoning in *Gilbert*. In *Gilbert*, the township did not participate before the zoning hearing board and did not appear or intervene before the trial court. *Gilbert*, 427 A.2d at 777. In ruling that the municipality would have standing to bring a zoning appeal to this court only if the municipality had been a party before the trial court, we reasoned that "[o]ur conclusion is consistent with sound judicial administration principles; for consistency, the party pursuing appellate review should be one of the parties who developed the record and decision to be reviewed." *Id.* at 779. Here, the Township participated in the proceedings before the Board, and because the Township operates through the Board, *see Mollick*, effectively fully participated before the trial court.

There was no surprise to anyone here as to the roles being played by the parties before the trial court. The Board was named as a party and participated in argument before the trial court and filed various pleadings, including a brief in opposition to the Marshalls' land use appeal and an Application for Reconsideration of the trial court's order. (*See* R.R. at 1a-4a; trial court 4/1/16 opinion at 1.) The purpose of a motion to intervene is to have a role as a party. Here, the Board already had that role before the trial court, and a motion to

---

[5] We recognize in *Gilbert*, this Court stated that the holding shall apply prospectively only "to cases arising out of zoning hearing board decisions (or governing body decisions under the MPC) …." *Gilbert*, 427 A.2d at 780. Gilbert did not involve a governing body decision, and therefore, that portion of our statement was dicta.

intervene under these circumstances would have been redundant and would have served only to promote form over substance.

Accordingly, for the foregoing reasons, we hold that the Board has standing to appeal to this Court.

We will now address the merits of the three issues raised by the Board on appeal to this Court. First, the Board argues that the trial court erred as a matter of law and abused its discretion in concluding that the Board improperly denied the conditional use application for the nighttime use, because substantial evidence supports the Board's determination. On the other hand, the Marshalls argue that whether a proposed use falls within a given category of permitted uses is a question of law, and thus, the trial court was not bound by the Board's findings and conclusions. The Marshalls argue that the Board construed the term "educational" too narrowly. The Marshalls also maintain that the adult and children's programs are essentially the same, so the Board's conclusion that the children's program is educational but the adult program is not is inconsistent and unsupportable as a matter of law. The Marshalls also argue that the Board's statement that the use is really a "restaurant" is contrary to the express definition of a "restaurant" in the Zoning Ordinance.

In a land use appeal, where, as here, the trial court does not take additional evidence, this Court's scope of review is limited to determining whether the local governing body committed an error of law or an abuse of discretion. *In re Thompson*, 896 A.2d 659 (Pa. Cmwlth. 2006). An abuse of discretion will only be

8

found in circumstances where the findings of the governing body are not supported by substantial evidence. *Id.* Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 640 (Pa. 1983). Whether a proposed use falls within a given category of uses in a zoning ordinance is a question of law. *Balady Farms, LLC v. Paradise Township Zoning Hearing Board*, 148 A.3d 496 (Pa. Cmwlth. 2016). Here, we review the Board's findings to determine if the Marshalls met the criteria of an "educational use" under the Township's Zoning Ordinance. *See Visionquest National, Ltd. v. Board of Supervisors of Honey Brook Township, Chester County*, 569 A.2d 915 (Pa. 1990).

The terms "educational" and "educational use" are not defined in the Zoning Ordinance. (Board's Conclusions of Law No. 9.) Coincidentally, in *Burgoon v. Zoning Hearing Board of Charlestown Township, Chester County*, 277 A.2d 837, 841 (Pa. Cmwlth. 1971), this Court interpreted the term "educational use" where it was not defined in the Township's zoning ordinance. This Court relied on the Supreme Court's description of "educational" which stated:

> "The word taken in its full sense, is a broad, comprehensive term, and may be particularly directed to either mental, moral or physical faculties, but in its broadest and best sense it embraces them all, and includes, not merely the instructions received at school, college, or university, but the whole course of training-moral, intellectual and physical."

*Id*. at 841 (quoting *Gilden Appeal*, 178 A.2d 562, 566 (Pa. 1962)).  In the absence of any definition to the contrary in the zoning ordinance, the term educational use must be presumed to have been employed in its broadest sense.  *Id*.  Additionally, simply because the use is commercial does not preclude it from being educational. *See id*.  However, the mere fact that the facility provides an educational experience does not make it an educational use.  *See Visionquest* (concluding that while wilderness camp for juvenile offenders offered some educational instruction, it was not a school because its primary mission was penological in nature).  Rather, the focus is on what is the primary function of the facility.  *Visionquest*.

Applicants' proposed use was described as a "Culinary Institute/Farm to Table Agricultural Use," and outlined culinary workshops, agricultural education workshops, animal programs, agricultural workshops and internships. (F.F. No. 25, R.R. at 57a, Certified Record Exhibit A-7.)  Applicant Paul Marshall described "farm to table" education as "the appreciation of fresh ingredients, educating customers about the link between the farmer, farm communities and a desire to practice a better appreciation for the food we eat."  (F.F. No. 36, R.R. at 55a.)  Mr. Marshall explained that the use would consist of:  (a) patrons walking the property to tour the planted gardens and see the workings of a farm; (b) education about planting vegetables; (c) patrons viewing agricultural artifacts and learning about Charlestown history while they are being served hors d'oeuvres; (d) patrons may meet local farmers, guest chefs, artisan cheese makers, or butchers depending on the workshop being delivered at the time; (e)  patrons are then seated and a couple of the patrons (e.g. the "big time foodies") will help to plate the food; (f) at the end, the patrons will sit at two farm tables and eat a full multi-course farm

10

to table dinner.  (F.F. Nos. 40(a)-(e), (h), R.R. at 62a-67a.)  There will be no ordering from a menu and no food will be taken home.  (F.F. No. 40(g).)  The Marshalls would employ no more than three people, one of whom would help to prepare and cook food and the others would help with the group, giving the tours through the gardens and barn, and serving the food to the patrons.  (F.F. Nos. 30, 40(f), R.R. at 61a-62a, 201a-04a.)  The patrons would be allowed to bring and consume alcoholic beverages as part of the experience.  (F.F. No. 48, R.R. at 208a.)

Among the many other witnesses was Fred Delong, who is the Director of the Willistown Conservation Trust Community Farm Program, whose main component is the Rushton Farm.  (R.R. at 661a-62a, *see* F.F. No. 118.)  Mr. Delong testified about the educational programs at Rushton Farm, including adult programs.  (R.R. at 662a-64a.)  Mr. Delong testified that the educational programs at Rushton Farm do not have any alcohol.  (R.R. at 667a, *see* F.F. No. 122.)  Mr. Delong also testified that at Rushton Farm only small food samples are provided, and the tasting is a small percentage of the educational program.  (F.F. No. 122, Board's decision at 23; *see* F.F. No. 123, R.R. at 667a-68a.)  Mr. Delong testified that the consumption of alcohol and the service of a full sit-down dinner were not necessary to meet the Farm's educational objectives.  (R.R. at 667a; *see* F.F. No. 124.)

In reviewing the Board's decision, we are mindful that some deference must be given to the interpretation of an ordinance by the entity that is charged with administering the ordinance …."  *Callowhill Neighborhood*

11

*Association v. City of Philadelphia Zoning Board of Adjustment*, 118 A.3d 1214, 1226 (Pa. Cmwlth.), *appeal denied*, 129 A.3d 1244 (Pa. 2015). Further, we must view the evidence in a light most favorable to the party who prevailed before the fact-finder, giving that party the benefit from all reasonable inferences arising from the evidence. *See In re McGlynn*, 974 A.2d 525 (Pa. Cmwlth. 2009).

While we acknowledge that there are educational aspects to the proposed use, as the Board did, we cannot say that the Board erred or abused its discretion in concluding that the educational aspects were accessory to the main use, which the Board said was similar to a "restaurant" use. The Board found that Mr. Marshall admitted that he intends to operate a restaurant. (F.F. No. 35.) While Mr. Marshall's use of the word "restaurant" is not in and of itself determinative, it is informative. Mr. Marshall testified that he proposes to renovate the second floor of the interior of the barn with a "restaurant" with an "exhibition kitchen and demonstration area" with "two farm tables where people dine at the end of the event to eat." (F.F. No. 26, R.R. at 60a-61a.) He also testified that the patrons would be served a "multi-course farm to table dinner" and would be allowed to bring and consume alcohol as part of the program. (F.F. Nos. 40(h) & 48, R.R. at 62a, 208a.) The Marshalls would employ up to three people, at least one of whom would help prepare and cook the food and serve the patrons as part of the "hospitality" experience. (F.F. Nos. 30, 40(h), R.R. at 61a-62a, 202a-04a.) Further, Mr. Marshall admitted that the proposed use is similar to a farm to table restaurant, but stated the difference is that in a restaurant, you can walk in any time you want. (F.F. No. 43, R.R. at 223a.) The Board deemed this distinction to be inconsequential. (F.F. at 44.) The Board found that the Marshalls were not

12

credible in their description of the proposed nighttime activities as "educational." Additionally, the Board credited the testimony of Mr. Delong that alcohol consumption and service of a full meal are not necessary to Rushton Farms' educational programs. The Board stated that the only inference that can be drawn from the fact that Applicants want to include alcohol and have a full course meal is that the nighttime activities are not educational.

Based on the Board's findings, a reasonable mind could conclude that the primary purpose was not educational but was similar to a "restaurant," or in other words, a dining experience. The Board's findings support the conclusion that the primary function of the nighttime use would be a dining experience rather an educational experience. Further, there is no indication that the Board did not construe "educational" in it broadest sense,[6] and thus that it erred as a matter of law in applying the definition to the proposed use.

Additionally, we reject the Marshall's arguments. Contrary to the Marshalls' assertion, the fact that the Board approved the daytime children's use does not render the Board's decision internally inconsistent. Indeed, Mr. Marshall testified that the afternoon workshop is a "completely different experience." (F.F. No. 38, R.R. at 172a.) Further, although the Board relied, in part, on the commercial nature of the proposed use, and we acknowledge that this in itself does not mean the use is not educational, *see Burgoon*, this does not mean the Board

---

[6] *Burgoon* is distinguishable because there the trial court committed an error of law in its interpretation of the term "educational use." The trial court concluded that every concept of academic instruction, i.e., mental, moral and physical, was essential to find the use educational.

13

erred as a matter of law. The commercial nature was not the sole determinative factor in the Board's decision. Finally, the fact that the Marshalls' proposed use does not meet the Zoning Ordinance's definition of a "restaurant," because, for example, it does not meet the requirements concerning square footage and capacity, does not automatically mean the use is educational or render the Board's decision unsupportable as a matter of law.

Accordingly, for the foregoing reasons, we conclude that the trial court erred when it reversed the Board's determination that the proposed nighttime use was not educational.

Next, the Board argues that the trial court abused its discretion or erred as a matter of law by holding that Sections 27-402.C(9) and 27-1619.A(5) of the Zoning Ordinance governing adaptive reuses for educational facilities was an alternative means of relief and therefore the trial court did not need to address those sections. The Board maintains that even if the Marshalls established that the use was educational, they must still meet all the requirements under these sections in order to make use of their Property for the proposed use.[7] Because we have determined that the Marshalls are not entitled to the proposed nighttime use, we need not address this issue.

_____

[7] We construe the Board's argument to be made in the context of the proposed nighttime use only. The Board states that the proposed daytime use will be able to comply with the objective requirements of these sections with conditions. (Board's brief at 31.) The Board does not challenge the trial court's decision and order with respect to the conditions imposed on the daytime use.

14

Finally, the Board argues that the trial court erred as a matter of law or abused its discretion, because it exceeded its jurisdiction by imposing its own conditions on the Marshalls' proposed nighttime use and rejecting the Board's conditions. Because we have determined that the Marshalls are not entitled to the proposed nighttime use, the conditions imposed by the trial court on the nighttime use are of no effect. Thus, this argument is moot, and we will not address it.

Accordingly, for the foregoing reasons, we reverse the trial court's order.

_____
JULIA K. HEARTHWAY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Paul Marshall and Julie Marshall     :
                           :
         v.             :   No. 1591 C.D. 2016
                           :
Charleston Township Board of      :
Supervisors and Cameron J.        :
Cloeter and Nancy H. Cloeter      :
                           :
Appeal of: Charleston Township    :
Board of Supervisors           :

O R D E R

AND NOW, this 29th day of August, 2017, the order of the Court of Common Pleas of Chester County in the above-captioned matter is hereby reversed.

_____
JULIA K. HEARTHWAY, Judge