# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Horvath Towers V, LLC, : 
                               Appellant : 
                                          : 
                 v. : 
                                          : 
Indiana Township Board of : 
Supervisors and Paul Didomenico, : 
John Whelan, Darlene Whelan, NPDCO : 
LLC, Rosalyn Didomenico, Pamela :   No. 1579 C.D. 2019
Didomenico and Nick Didomenico :   Submitted: May 15, 2020

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                           FILED: June 10, 2020

Horvath Towers V, LLC (Applicant) appeals from the Allegheny County Common Pleas Court's (trial court) October 16, 2019 order affirming the Indiana Township (Township) Board of Supervisors' (Board) decision denying a conditional use application to construct a communications tower (Application) in the Township. There are two issues before this Court: (1) whether Applicant satisfied all Township Zoning Ordinance[1] (Ordinance) requirements and whether the objectors failed to meet their burden of establishing that approval would substantially affect the community's health, safety and welfare; and (2) whether the Board's denial constitutes a violation of the Telecommunications Act of 1996[2] (TCA). After review, we affirm.

---

[1] Township Ordinance No. 368, *as amended*.
[2] 47 U.S.C. §§ 151-624.

Applicant is a communications tower infrastructure provider that owns and operates thousands of communications tower sites. On September 11, 2018, Applicant and Pittsburgh SMSA Limited Partnership d/b/a Verizon Wireless (Verizon)[3] filed the Application for a telecommunications tower facility (Communications Facility[4]) at 395 Francioni Hill Lane in Glenshaw, Pennsylvania (Property). The Property is 7.446 acres and is located in the Township's Medium Density Residential (MDR) zoning district.[5] Applicant entered into an Option and Land Lease Agreement (Lease) to lease a 100' x 100' portion of the Property (Leased Premises) for the proposed Communications Facility from owners Valentino and Norma Francioni (Lessors). On September 22, 2018, the Township's engineer informed Applicant that the Application was incomplete. On January 17, 2019, Applicant submitted the complete Application.

On January 23, 2019, the Township Planning Commission recommended the Application be denied. On February 12, 2019, the Board held a public hearing on the Application. *See* Reproduced Record (R.R.) at 3a. Applicant presented testimony and documentary evidence in support of its Application. Numerous residents presented lay and expert testimony and documentary evidence in opposition (Objectors) to the Application. At the hearing's conclusion, the Board denied the Application on the basis that Applicant had not met its burden of

---

[3] Verizon did not appeal from the Board's decision.

[4] Section 201 of the Ordinance defines "Communications Facilities" as:

> Any communications tower and its associated structures (Antenna(c)) operated by any person, agency or corporation, not otherwise a public utility regulated by the Pennsylvania Public Utility Commission, who or which furnishes mobile domestic cellular radio telecommunications services, or other communications services, including commercial radio and television, of any type for public or private use.

Reproduced Record at 485a.

[5] Section 302 of the Ordinance permits a Communications Facility as a conditional use in an MDR zoning district.

demonstrating that it satisfied the requirements of the following subsections of Section 511.B.1. of the Ordinance: a, c, d, f, i, j, l, m, n, o and p; that Applicant did not demonstrate compliance with the General Criteria set forth in Section 511.A.1.b of the Ordinance; that Objectors showed a high probability that the proposed use would create an adverse impact; and that denial of the Application did not violate the TCA. Applicant appealed to the trial court. On October 16, 2019, the trial court denied the appeal and affirmed the Board's decision, concluding that Applicant failed to satisfy the requirements of Section 511.B.1.a of the Ordinance. The trial court did not address the Board's conclusions that Applicant had not demonstrated compliance with other Ordinance provisions. Applicant appealed to this Court.[6]

> Initially, this Court has explained:
>
> '[A] conditional use is nothing more than a special exception which falls within the jurisdiction of the municipal governing body rather than the zoning hearing board.' [*In re*] *Thompson*, 896 A.2d [659,] 670 [(Pa. Cmwlth. 2006)]. Just like special exceptions, a conditional use is not an exception to a municipality's zoning ordinance, 'but rather a use to which [an] applicant is entitled[,] provided the specific standards enumerated in the ordinance for the [conditional use] are met by the applicant.' *Id.* (citations omitted). In recognition of the similarity between special exceptions and conditional uses, courts apply the same standards of proof to both types of applications.
>
> The applicable standard of proof requires an applicant to demonstrate that the use proposed in an application complies with the specific criteria of the particular ordinance. An applicant who [sic] satisfies this prima facie burden is entitled to approval, unless objectors in the proceeding offer credible and sufficient evidence indicating that the proposed use would have a detrimental impact on

---

[6] "Generally, where the trial court takes no additional evidence, appellate review in a land development appeal is limited to determining whether the local governing body committed an error of law or an abuse of discretion." *In re AMA/Am. Mktg. Ass'n*, 142 A.3d 923, 930 n.5 (Pa. Cmwlth. 2016).

3

public health, safety, and welfare. In referring to 'specific' criteria in a conditional use provision, we have observed that '[s]pecificity is the essential characteristic of operative [conditional use] requirements in an ordinance. The Pennsylvania Supreme Court has long defined a special exception as one allowable where requirements and conditions *detailed* in the ordinance are found to exist.' *Bray v. Zoning Bd. of Adjustment*, . . . 410 A.2d 909, 911 ([Pa. Cmwlth.] 1980) (emphasis in original).

*Williams Holding Grp., LLC v. Bd. of Supervisors of W. Hanover Twp.*, 101 A.3d 1202, 1212 (Pa. Cmwlth. 2014) (citations omitted). It is an applicant's burden to prove that the proposed plan complies with all of the zoning ordinance's objective requirements. *Thompson*.

"In conditional use proceedings where the trial court has taken no additional evidence, the Board is the finder of fact, empowered to judge the credibility of witnesses and the weight afforded to their testimony; a court may not substitute its interpretation of the evidence for that of the Board." *In re Richboro CD Partners, L.P.*, 89 A.3d 742, 754-55 (Pa. Cmwlth. 2014). This Court "must view the evidence in a light most favorable to the party who [sic] prevailed before the fact-finder, giving that party the benefit from all reasonable inferences arising from the evidence." *Marshall v. Charlestown Twp. Bd. of Supervisors*, 169 A.3d 162, 169 (Pa. Cmwlth. 2017).

Applicant contends that it met its burden of demonstrating compliance with all objective conditional use criteria. Applicant addresses each of the criteria individually, describing its basis for asserting error.

At the outset, Section 511.A.1 of the Ordinance provides, in relevant part:

a. . . . All applications for conditional uses shall comply with the specific standards set forth in this Ordinance.

4

b. Standards: In addition to any express standards set forth in this Ordinance, a conditional use application must comply with the following:

i. The applicant will reduce any adverse impacts on existing uses to the maximum extent feasible, including but not limited to, developing measures that address lighting and glare, hours of operation, refuse storage and removal and other similar characteristics.

ii. The use can be accommodated on the site without design modifications or variances.

iii. Unless otherwise specified, buffer yards shall comply with Article VI of this Ordinance.

iv. At a minimum, areas of the property not covered by buildings or impervious surface shall be landscaped as per Article VI of this Ordinance.

v. The use has or provides off-street parking on the same property as the use and in compliance with Article VIII of this Ordinance.

vi. Primary access points to the property shall be located as far from the road(s) and intersection(s), and sight triangle areas, as required by Title 67 (PennDOT Specifications).

R.R. at 537a-538a. With respect to conditional use applications for communication facilities, Section 511.B.1 of the Ordinance states, in pertinent part:

The following provisions shall apply to communication facilities:

a. The minimum site area required for a single communication facility shall be one (1) acre for each 100 feet of height or a portion of 100 feet of height. . . . The tower site shall also be capable of meeting the requirement of subsection ([] F) hereinafter set forth.

. . . .

c. For Communication Facilities, shared use of towers and tower sites shall be encouraged. If shared use of an existing or approved tower or an existing or approved tower site is

5

not proposed, the applicant shall demonstrate that the proposed equipment cannot be accommodated on an existing or approved tower or an existing or approved tower site for the following reasons:

i. The proposed equipment would exceed the structural capacity of the existing or approved towers and reinforcement of the existing or approved towers cannot be accomplished at a reasonable cost.

ii. The proposed equipment will cause RF (Radio Frequency) interference with other existing or proposed equipment for that tower or that existing or approved tower site and the interference cannot be prevented at a reasonable cost.

iii. Existing or approved towers or the existing or approved tower sites do not have adequate space to accommodate the proposed equipment.

iv. Addition of the proposed equipment would result in NIER (Non-Ionizing Electromagnetic Radiation) levels that exceed any adopted local, [s]tate, or [f]ederal emissions standards.

v. There are other valid reasons that make it impractical to place the proposed equipment on any existing or proposed tower or any existing or approved site.

d. Any approval of a Communication Facility shall be subject to the agreement of the applicant to construct the tower with the capacity to accommodate additional communication facilities which might be needed in the future by the applicant or by another party.

. . . .

f. Communication facilities and their associated structures may exceed the height limitations of the [z]oning [d]istrict, provided they shall be set back from any property line or public street right-of-way a minimum distance of fifty percent (50%) of the tower height or greater, if necessary, to guarantee that in the event of a collapse, the structure shall not fall on any adjacent property and all ice fall or debris

from the tower failure shall be contained on the Communication Facility property.

. . . .

i. The applicant shall submit evidence that the tower and its method of installation has been designed by a registered engineer and is certified by that registered engineer to be structurally sound and able to withstand wind, earthquake and other loads in accordance with accepted engineering practice.

j. The tower shall be subject to any applicable Federal Aviation Administration (FAA) and airport zoning regulations.

. . . .

l. All lighting shall be shielded and reflected away from adjoining properties.

m. A minimum of two (2) off-street parking spaces shall be provided on the Communication Facility site plus one (1) additional off-street parking space for each on-site personnel.

n. Existing vegetation on site shall be preserved to the maximum extent possible, and the exterior of the fencing enclosing the tower structure shall be landscaped to buffer the visual impact of the tower base from adjoining properties.

o. A minimum twenty (20) foot easement or right-of-way for access shall be provided to the tower which is adequate to accommodate maintenance and emergency vehicles and which is improved with a dust free, all-weather surface sufficient to accommodate the weight of vehicles proposed to use the easement or right-of-way subject to approval by the [Board]. The landowner or lessee shall maintain the right-of-way or easement.

p. If acreage of the site permits, a Communication Facility may be located on a lot or parcel of land devoted to another principle [sic] use.

R.R. at 540a-543a.

7

## Section 511.B.1.a of the Ordinance

Applicant first argues that it proved compliance with Section 511.B.1.a of the Ordinance pertaining to minimum site acreage. That Section provides, in relevant part: "**The minimum [tower] site area required for a single communication facility shall be one (1) acre for each 100 feet of height or a portion of 100 feet of height**." R.R. at 540a (emphasis added). Applicant argues that the "site area" is the 7.75-acre Property rather than Applicant's 100' x 100' leased portion of the Property. Applicant asserts that the Ordinance

> does not require [Applicant] to *lease* one acre for each 100' of tower height. In fact, the word 'lease' is not found anywhere in Section 201 [of the Ordinance] . . . or Section 511.B.1.[a of the Ordinance]. Conversely, the . . . Ordinance only requires a minimum *site area* (not the lease area) for a tower to measure one acre for each 100' of tower height.

Applicant Br. at 20 (citations omitted).

In reaching its decision, the Board considered that Applicant proposed to lease only a 10,000-square-foot area (100' x 100') of the 7.75-acre Property. *See* R.R. at 287a, 579a. The Board noted that Section 201 of the Ordinance defines "tower site" as "[a]ny lot or parcel on which communications facilities are located or proposed to be located." R.R. at 497a. The Board further referenced Section 201 of the Ordinance, which defines "lot" as "[a] designated parcel, tract or area of land established by a plat, subdivision, or as otherwise permitted by law, and to be used, developed or built upon as a unit."[7] R.R. at 489a. Moreover, the Board considered

---

[7] This Court notes that the Ordinance does not define the terms "tract" or "plat." However, Black's Law Dictionary (10th ed. 2014) defines "tract" as "[a] specified parcel of land[.]" *Id.* at 1720. Further, it defines "plat" as "[a] small piece of land set apart for some special purpose[,]" or "[a] map or plan of delineated or partitioned ground; esp., a map describing a piece of land and its features, such as boundaries, lots, roads, and easements[.]" *Id.* at 1337. "While it is true that zoning ordinances are to be liberally construed to allow the broadest possible use of land, it is also true that zoning ordinances are to be construed in accordance with the plain and ordinary meaning of their

"[Objectors'] testimony regarding communication facility-leased sites being taxed separately from the parent parcel and being given a separate tax identification number." R.R. at 580a, Finding of Fact No. 34. The Board also relied on the Lease, which assigns to Applicant real estate and personal property tax obligations associated with the Leased Premises. Based on a plain reading of the Ordinance, the Board determined that the "tower site" area was the "lot . . . on which communications facilities are located or proposed to be located[,]" R.R. at 497a, *i.e.*, the "designated parcel of land . . . established by a plat[.]" R.R. at 489a; *see also* R.R. at 580a.

> This Court has explained:

> [A]ppellate courts reviewing a governing body's adjudication of a conditional use application generally **should defer to the interpretation rendered by the governing body**. '[A]s the entity charged with administering a zoning ordinance,' **the governing body possesses knowledge and expertise regarding the ordinance**. [*Smith v. Zoning Hearing Bd.*, 734 A.2d 55,] 58 [(Pa. Cmwlth. 1999)].

*Williams Holding Grp., LLC*, 101 A.3d at 1213 (emphasis added; citation omitted). *See also Montgomery Crossing Assocs. v. Twp. of Lower Gwynedd*, 758 A.2d 285, 288 (Pa. Cmwlth. 2000) ("[A board of supervisors'] interpretation of [a zoning] provision is entitled to substantial deference.").

Here, the plat attached to Applicant's Application unambiguously described the tower site area - the only area Applicant will control under the Lease - as 100' x 100'. *See* R.R. at 311a; *see also* R.R. at 287a. Given that Applicant's tower's height is to reach 190 feet, the minimum tower site area must be almost 2 acres - approximately 87,120 square feet. Because the proposed tower site's 10,000-

---

words." *Zappala Group, Inc. v. Zoning Hearing Bd. of Town of McCandless*, 810 A.2d 708, 710 (Pa. Cmwlth. 2002).

square-foot dimensions do not meet this condition, the Board properly concluded that Applicant failed to satisfy the requirement. Having concluded that Applicant did not establish that the proposed use met the requirements of Section 511.B.1.a of the Ordinance, this Court need not consider Applicant's compliance with the Ordinance's other requirements.[8]

Applicant next argues that the Board's denial of its Application violates the TCA because a locality cannot deny an application if, in so doing, it would have the effect of prohibiting wireless services.

## TCA

The United States Third Circuit Court of Appeals has explained:

The TCA expressly preserves the authority of state and local governments to regulate land use and zoning, but places several substantive and procedural limits upon that authority when exercised in relation to personal wireless service facilities. *APT Pittsburgh Ltd. v. Penn Twp. Butler C[]ty. of P[a.]*, 196 F.3d 469, 473 (3d Cir. 1999). One such substantive requirement is [S]ection 332(c)(7)(B) of the TCA, which states:

---

[8] Notwithstanding, it is clear that Applicant did not comply with other mandatory conditions. For example, Section 511.B.1.j of the Ordinance provides that "[t]he tower shall be subject to any applicable [FAA] and airport zoning regulations." R.R. at 542a. In its application, Applicant claimed that the FAA had approved the proposed tower. *See* R.R. at 233a. However, the FAA's "Determination of No Hazard to Air Navigation" (FAA Determination) - the document Applicant attached as Exhibit C to its Application evidencing the FAA's approval - expired December 13, 2018. *See* R.R. at 270a-271a. The FAA Determination stated that a "REQUEST FOR EXTENSION OF THE EFFECTIVE PERIOD OF THIS DETERMINATION MUST BE E-FILED AT LEAST 15 DAYS PRIOR TO THE EXPIRATION DATE." R.R. at 271a. At the February 12, 2019 hearing, Applicant provided no evidence that the FAA Determination had been extended.

Further, with respect to Section 511.B.1.o of the Ordinance, which requires a minimum of a 20-foot easement or right-of-way for emergency vehicle tower access, Applicant proposed to use Francioni Hill Lane, a private road, since neither the Property nor the Leased Premises have frontage on a public road. However, Lessors do not own Francioni Hill Lane in fee, and Applicant did not establish its right to use the private road for such purposes. *See* R.R. at 149a-154a, 169a-174a, 246a, 249a. Additionally, the Board, as fact finder, credited Objectors' evidence showing that in numerous locations along Francioni Hill Lane, the cartway is far narrower than the required 20-foot width.

10

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any [s]tate or local government or instrumentality thereof -- . . .

(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

47 U.S.C. § 332(c)(7)(B). A state or local government has effectively prohibited the provision of wireless services where a carrier has demonstrated that (1) its facility will fill a significant gap in service, and (2) the manner in which it proposes to fill the significant gap in service is the least intrusive on the values that the denial sought to serve. *APT Pittsburgh Ltd.*, 196 F.3d at 480.

*Sprint Spectrum, L.P. v. Zoning Bd. of Adjustment of Paramus N.J.*, 606 F. App'x 669, 671 (3d Cir. 2015).[9]

There are two approaches to use when deciding if there is a significant gap in the ability of remote users to access the national telephone network. The 'user-oriented' approach [or one-provider rule], followed by the Third Circuit, requires the applicant to demonstrate that 'the area the new facility will serve is not already served by another provider.' *Omnipoint Comm*[*c'ns*] *Enter*[*s.*]*, L.P. v. Zoning Hearing Bd. of Easttown Twp.*, 331 F.3d 386, 398 (3d Cir. 2003). The 'multi-provider' approach, which is endorsed by the [Federal Communications Commission (]FCC[)], requires applicants to merely show that they do not provide reliable service in a given area, regardless of other carriers' service in the same area. *See In Re: Petition for Declaratory Ruling to Clarify Provisions of* § 332(c)(7)(B), 24 FCC Rcd 13994, Section C (F.C.C. 2009) [(2009 Declaratory Ruling)].

---

[9] The Pennsylvania Supreme Court has explained that "the pronouncements of the lower federal courts have only persuasive, not binding, effect on the courts of this Commonwealth - although we certainly are bound by the decisions of the [United States] Supreme Court on questions of federal law." *In re Stevenson*, 40 A.3d 1212, 1221 (Pa. 2012).

*Nextel Commc'ns of the Mid-Atlantic, Inc. v. Zoning Hearing Bd. of Ross Twp.*, (M.D. Pa. No. 3:14-CV-2409, filed Mar. 31, 2016), slip op. at ___, 2016 U.S. Dist. LEXIS 44254, at *11-12.[10]

Recently, in *Fairview Township v. Fairview Township Zoning Hearing Board*, ___ A.3d ___, (Pa. Cmwlth. Nos. 1493, 1494 C.D. 2018, filed June 2, 2020), this Court, *en banc*, was confronted with the issue of whether the Third Circuit's one-provider rule or the FCC's multi-provider approach should be applied therein. In *Fairview Township*, an applicant submitted two separate variance requests pertaining to proposals to construct two wireless telecommunications facilities on two separate parcels of property. The zoning hearing board granted the variance requests, and the township appealed. The trial court conducted a *de novo* hearing and, thereafter, granted the variances, concluding that the applicant met all variance requirements for one of the parcels, but failed to satisfy three of the five elements relative to the other. Nonetheless, the trial court granted the variances for both properties concluding that the TCA mandated such approval. The township appealed to this Court.

Examining the 2009 Declaratory Ruling, the *Fairview Township* Court stated:

> Notably, simply looking at the question of whether a service provider has a gap in its coverage (or is attempting to densify, expand or otherwise improve its existing service) is not the entirety of the FCC's ruling on what constitutes a prohibition or effective prohibition. Significantly, in rejecting the 'one[-]provider' rule, the FCC's 2009 Declaratory Ruling states, 'it is a violation of Section 332(c)(7)(B)(i)(II) [of the TCA] for a [s]tate or local government to deny a personal wireless service facility siting application *solely because* that service is available from another provider.' 2009 Declaratory Ruling at 14000

---

[10] The *Sprint Spectrum, L.P.* Court declined to choose between the two approaches because it concluded that the applicant failed to satisfy either standard. *See also Liberty Towers, LLC v. Zoning Hearing Bd. of Falls Twp., Bucks Cty., Pa.*, (E.D. Pa. No. 10-7149, filed Dec. 6, 2011).

¶ 19 (emphasis added); *see also id.* at 14016 ¶ 56 (stating, 'a [s]tate or local government that denies an application for personal wireless service facilities siting *solely because* 'one or more carriers serve a given geographic market' has engaged in unlawful regulation that 'prohibits or ha[s] the effect of prohibiting the provision of personal wireless services,' within the meaning of Section 332(c)(7)(B)(i)(II)') (emphasis added); *id.* at 14021 ¶ 71. Additionally, the FCC stated, 'where a *bona fide* local zoning concern, rather than the mere presence of other carriers, drives a zoning decision, it should be unaffected by our ruling today.' *Id.* at 14018 ¶ 62. Accordingly, given this language in the FCC's 2009 Declaratory Ruling, we agree with the [t]ownship that the TCA does not 'trump' the [Municipalities Planning Code (MPC)[11]] with respect to the placement of wireless telecommunications towers.

Despite quoting the 'solely because' language from the FCC's [2009 Declaratory R]uling in its opinion, the trial court, in concluding that an applicant need establish only a gap or other deficiency in its own coverage in order to establish entitlement to a variance, took the FCC's statement out of context and did not consider the entirety of the FCC's statement as to what constitutes a prohibition or effective prohibition. This was error. The FCC's [2009] Declaratory Ruling directs us to look at what 'drives' the zoning decision or, in other words, on what the decision is based.

*Id.* at ___, slip op. at 18-19 (footnote omitted).

In holding that the TCA did not preempt application of the zoning ordinance, the *Fairview Township* Court explained:

In short, the presence of other carriers, or the condition of [the service provider's] coverage, did not play a role in the variance determinations for either [of the subject properties]. Thus, because the prohibition of services here was not based 'solely on the presence of another carrier' and because 'a *bona fide* local zoning concern, rather than the mere presence of other carriers, drives [this] zoning decision,' the decision to deny the variances does not

_____

[11] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

13

'prohibit' or 'effectively prohibit' the provision of wireless services in contravention of the TCA and, therefore, 'should be unaffected by [the FCC's] ruling.' *See* 2009 Declaratory Ruling at 14017 ¶ 60, 14018 ¶ 62. Indeed, we have stated that '[n]ot every municipality's denial of an application to build a wireless facility violates the TCA.' *Vineyard Oil & Gas Co. v. N*[.] *E*[.] *Twp. Zoning Hearing Bd.*, 215 A.3d [] 77, 87 (Pa. Cmwlth. 2019) (citing *APT*); *see also APT* [*Pittsburgh Ltd.*], 196 F.3d at 478 (stating that to '[i]nterpret[] the TCA's 'effect of prohibiting' clause to encompass every individual zoning denial simply because it has the effect of precluding a specific provider from providing wireless services, however, would give the TCA preemptive effect well beyond what Congress intended[.']).

*Id.* at ___, slip op. at 20-21.[12]

The *Fairview Township* Court concluded that the township's zoning hearing board's denial of the requested variances was "not 'solely because' the service [was] available from another provider, but, rather, [was] based on a bona fide local zoning concern. Indeed, with respect to [one parcel], the trial court found that [the applicant] failed to establish three of the five elements necessary for a variance." *Id.* at ___, slip op. at 19. The *Fairview Township* Court expounded:

These reasons have nothing to do with whether service is available from another provider or whether [the service provider] needed to densify, expand or otherwise improve its network. Consequently, the denial of the variances pursuant to the MPC was not based *solely* on the presence of other providers or the existence of some coverage by [the service provider].

*Id.* at ___, slip op. at 19-20.

Similarly, in the instant matter, the Board's Application denial had nothing to do with whether service was available from another provider or whether

_____

[12] Based on this disposition, and the fact that the variances were not being denied solely due to a significant gap in the applicant's coverage or because a gap existed that was being serviced by another provider, the Court did not reach the question of whether Pennsylvania should apply the one-provider rule.

Verizon had a gap in its coverage. Rather, the Application denial was "based on a bona fide local zoning concern." *Id*., slip op. at 19. The Board found that Applicant had failed to satisfy, *inter alia*, the following subsections of Section 511.B.1. of the Zoning Ordinance: a, c, d, f, i, j, l, m, n, o and p. For these reasons, this Court concludes that neither the trial court nor the Board violated the TCA.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Horvath Towers V, LLC,                    :
                          Appellant       :
                                          :
              v.                          :
                                          :
Indiana Township Board of                 :
Supervisors and Paul Didomenico,          :
John Whelan, Darlene Whelan, NPDCO        :
LLC, Rosalyn Didomenico, Pamela           :    No. 1579 C.D. 2019
Didomenico and Nick Didomenico            :


## O R D E R

AND NOW, this 10th day of June, 2020, the Allegheny County Common Pleas Court's October 16, 2019 order is affirmed.


_____
ANNE E. COVEY, Judge